## WORLD'S FAIR MINING COMPANY *v.* POWERS.

### ERROR TO THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 207.  Argued March 11, 12, 1912.—Decided April 1, 1912.

The owner of a mine contracted with a purchaser for the latter to go into possession and proceed with the development of, and extract ore from, the mine, and to deposit to the credit of the owner in a designated bank the net proceeds up to a specified amount when deeds to the property, deposited in escrow should be delivered. The purchaser proceeded with the work, but deposited proceeds to his own credit in another bank, whereupon the owner attached such deposit and took forcible possession of the mine. In a suit brought by the purchaser, *held* that:

> The deposit of proceeds of ore in the specified bank was a condition concurrent or precedent to the obligation of the owner to go on with the contract; and, unless the declaration disclosed an excuse for the breach, the owner was justified in retaking possession.

> That the action of the owner in attaching the deposit was not an excuse for a breach by the purchaser, nor did the declaration disclose any sufficient excuse for the breach.

> Under the contract the act of the owner in suing for part of the purchase price which belonged to him would not prevent him from terminating the contract for failure to perform; there was no election.

10 Arizona, 5, affirmed.

THE facts, which involve the construction of a contract for sale of mines and what constituted breaches thereof, are stated in the opinion.

*Mr. Frank H. Hereford,* with whom *Mr. F. E. Curley* was on the brief, for plaintiff in error:

The pleadings fully allege those conditions of the con-

tract that the Arizona courts construed into a condition precedent, fully allege nonperformance, and fully allege excuses for nonperformance on the part of the plaintiff in error.

If a party expressly avers or confesses a material fact omitted on the other side, the omission is cured. *Hill* v. *George,* 5 Texas, 87; *McFarland* v. *Mooring,* 56 Texas, 118; *International & G. N. R. Co.* v. *Sein,* 33 S. W. Rep. 558.

Many defects are waived and cured by pleading over, that might have been fatal on demurrer. *United States* v. *Morris,* 10 Wheat. 246, 283; 31 Cyc. 714.

The reply as a pleading on the part of plaintiff is especially authorized by the statutes of Arizona. Rev. Stat. Arizona, 1901, par. 1357.

Pleadings will be construed most favorably towards the pleader in determining whether or not the allegations therein contained are sufficient to apprise the opposite party of the questions of fact that the pleader will seek to establish on the trial. *United States* v. *Parker,* 120 U. S. 89, 97.

The provisions of the contract relating to the depositing of proceeds of shipments of ore need not be specially pleaded, because they were either independent conditions or conditions subsequent.

Payments to the credit of defendants in error for ore shipped were not conditions precedent to the contract nor to any rights thereunder. The contract did not make such payments a condition precedent.

Setting forth in the contract those failures to perform which would justify a termination of the contract, negatived any claims that a failure to perform any of the other conditions of the contract would authorize the aggrieved party to terminate it. *"Expressio unius est exclusio alterius"* applies to contracts. *Douglas* v. *Lewis,* 131 U. S. 75; *Tucker* v. *Alexandroff,* 183 U. S. 424, 436.

The putting of these deeds in escrow was an important

and an expressed condition in the contract. *New Orleans* v. *Texas & P. Ry.*, 171 U. S. 334.

None of the parties to the contract intended that its terms in relation thereto should be a condition precedent and never afterwards considered them as such.

The escrow instructions of April 15, 1904, were not a modification or amendment of the original contract, or intended as such. Those instructions prescribed no penalty except the destruction of deeds deposited in escrow for a failure to perform the conditions of the escrow. No penalty could be claimed or enforced under the terms of the escrow instruction until defendants in error had done certain things that were never alleged to have been done nor proved to have been done. 7 Ency. of U.·S., Sup. C. Rep. 264; 4 *Id.* 573.

The Supreme Court of Arizona has inferentially held that the escrow instructions did not modify or become a part of the original contract. *Powers* v. *World's Fair·Mining Co.* (Ariz.), 86 Pac. Rep. 15; *S. C.*, 100 Pac. Rep. 955.

What is implied is as effectual as what is expressed. The intent of the parties as manifested is the contract. *Equitable Ins. Co.* v. *Hearne*, 20 Wall. 494, 496; *United States* v. *Babbitt*, 95 U. S. 334, 336.

Even if·deposits to the credit of defendant in error of the proceeds of ore shipped were a condition precedent in the contract, then before the time for its performance, defendants in error had elected not to so consider such conditions, had waived the condition precedent, and had elected to consider the contract unbroken by plaintiff in error's failure to perform. 15 Cyc. 258 *et seq.*

The so-called condition precedent was satisfied and complied with nine days before time for complying with it had arrived. *Central Nat. Bank* v. *Conn. Mut. L. Ins. Co.*, 104 U. S. 54.

*Mr. Eugene S. Ives* for defendants in error.

Mr. Justice Holmes delivered the opinion of the court.

This is an action brought by the plaintiff in error upon a contract made by the defendants in error, hereafter called Powers, with one Ferguson, and assigned to the plaintiff in error. The contract was for the sale of some mines known as the World's Fair Group. Powers agreed to place a deed of the mines in escrow in the Arizona National Bank of Tucson within ninety days, to be delivered on performance of the undertakings on the other side. Ferguson was to begin work within ninety days and to go on at a minimum rate until one thousand feet had been done. All ore taken or stoped out below the main level and all ores then on the dumps were to be milled, concentrated or leached on the grounds, twelve dollars per ton being allowed to Ferguson for such treatment. On all ores, if any should be extracted, better adapted to be shipped directly to a smelter, and upon all concentrates, a further allowance to the extent of the shipping and smelting charges was to be made. Ferguson agreed to ship the products 'and after the deduction of the said shipping and smelter charges, to deposit in trust in the Arizona National Bank, Tucson, Arizona, the net proceeds therefrom, the same to remain in trust in said bank until the expiration of this agreement, which shall be upon the completion of the aforesaid one thousand feet of work, or until such time' as Ferguson should pay Powers $450,000 and deliver to him one-quarter of the full paid stock of a company that Ferguson agreed to form for working the mines, the moneys deposited in trust thereupon to be Ferguson's. The agreement was to be void if Ferguson did not begin and prosecute the work in the manner and at the rate agreed upon, and in that event all permanent improvements were to belong to Powers.

By a subsequent modification of April 15, 1904, it was agreed that the money deposited in the Arizona National

Bank should at once belong to and be at the disposal of Powers and be credited upon the $450,000, the other party being released from further liability upon the amounts. On the same date deeds from Powers to Ferguson, and from Ferguson and the London and Glasgow Development Company, his assignee, to the World's Fair Mining Company were placed in escrow by Powers and Ferguson in the Arizona National Bank, with instructions that upon demand by Powers in writing the bank should appoint a person to ascertain whether there had been a breach of agreement on the other side, and if he should certify other breaches or a failure to deposit the returns from ores, less the allowances, for more than fifteen days after the receipt of the returns, then Powers's deed was to be given back and the other deed destroyed. There were also provisions that in case of performance the bank should deliver the deeds. Before April 15 Ferguson and his assignee had been in possession and at work. Shortly after that date the World's Fair Mining Company went on with the business. On June 6, 1904, it received several thousand dollars proceeds from ores and deposited them in the First National Bank of Nogales, to its own account. The money not having been deposited in the Arizona National Bank and Powers being dissatisfied with the conduct of the plaintiff's predecessors, who also seem to have failed to deposit as agreed, on June 11 he brought suit and garnisheed the Nogales account. The company kept on at work, but on July 25 Powers took forcible possession of the mines. Subsequently this action was brought.

At the trial the plaintiff offered in evidence the record of the attachment suit, but the court excluded it and directed a verdict for the defendant on the ground that the deposit in the Arizona National Bank was a condition concurrent with or precedent to the obligation of Powers to go on with the contract, and that the declaration did

not disclose an excuse for the plaintiff's breach; that it did not purport to admit a failure or to allege that such failure was due to Powers. The Supreme Court of the Territory took the same view and affirmed the judgment, as the plaintiff, on its attention being called to the matter at the trial, had not seen fit to amend.

The exclusion of the evidence and the direction to the jury both turn on the same point and call for an analysis of the pleadings so far as material. The declaration states the contracts, assignments and escrow and the other facts that we have mentioned; that Powers brought the suit with the intent to break and abrogate the contract; that therein he alleged a debt of the London and Glasgow Development Company for $6617, and one of the present plaintiff for $8000; that by his garnishment and an injunction that he obtained for a time he sought to prevent the plaintiff from carrying out its contract, and that after the injunction was dissolved Powers proceeded with the litigation, threatening to attach any other funds brought into the Territory, and 'continued to harass, impede and defeat the efforts of the plaintiff to carry out the terms of its said contracts.' The plaintiff relies upon the foregoing allegations, and especially the word 'defeat,' as showing that Powers prevented its performance by his acts. But the declaration goes on that these acts made the plaintiff fear that if it brought any more money into the Territory that also would be attached, that they crippled and impeded it, and that 'when plaintiff had finally succeeded in overcoming the conditions' thus occasioned, Powers took possession of the mine.

The declaration admits, therefore, that the acts of Powers were not sufficient to prevent the plaintiff from keeping its undertaking. It implies also that the plaintiff had other money out of the Territory, and in no way shows that it could not have made the required deposit in the Arizona Bank. The garnishment of the sum in the

Nogales Bank did not prevent putting other money into the Arizona Bank if the World's Fair Company did not see· fit to release the attachment—and if the deposit had been made in time and to the right amount the source from which it came would not have mattered.' The deposit never was made and therefore it is unnecessary to consider whether there had not been a breach by the failure to deposit at once before Powers attached. The plaintiff argues from the escrow that it had fifteen days— but as it also contends for other purposes that the escrow did not modify the contract, the argument is weakened. But it is enough that on the record the plaintiff discloses an unexcused breach. There is nothing in the answer to better the case thus made. We agree with the courts below that the depositing in the Arizona Bank was a condition concurrent with the obligation of Powers to allow the plaintiff·to continue in possession and precedent to Powers's obligation to convey.

The escrow instructions treat making the deposits as a condition to the plaintiff's rights. The plaintiff's argument that the instructions do not modify the contract is only effective to exclude the introduction of an allowance of fifteen days for making the deposit, as the instructions are not needed to make the meaning of the contract clear. For even if the express condition of avoidance for failure to prosecute the work 'in the manner and at the rate agreed upon,' does not certainly extend to this, it is not· to be supposed that the plaintiff was to be allowed to go on converting the proceeds of the mine into money and at the same time appropriate the whole instead of turning the net amount over to Powers.

Another matter might perhaps have caused a difficulty with different pleadings. It is suggested that the previous suit of Powers against the World's Fair Mining Company was a suit for the proceeds of ore that should have been deposited. It might be argued that Powers had no right to

that money unless the contract was to be carried through, that he might have declined to go further and have sued the company for the breach, *Anvil Mining Co.* v. *Humble,* 153 U. S. 540, 552, but that he could not claim part of the purchase-price, as such, unless he was content to go on, and thus that Powers had elected against the termination of the contract before he attempted it. But no such election is pleaded, and not enough appears to show that if it had been, it could have been proved. The precise nature of the former suit does not appear, nor whether it had been proceeded with far enough to conclude Powers's right of choice. Moreover if Powers terminated the contract, he would not affirm it by suing for proceeds of ore belonging to him in that event. No error appears in the judgment below, and it is affirmed.

*Judgment affirmed.*