[Civil No. 1933.   Filed November 23, 1922.]

[210 Pac. 318.]

## JOHN H. BARRY, Appellant, v. DENVER HOLMESLEY, Appellee.

1. LANDLORD AND TENANT—LESSEE AGREEING TO PAY FOR IRRIGATION HELD NOT BOUND TO PAY ASSESSMENT FOR CONSTRUCTION OF PUMPING PLANT.—Where a farm lease bound lessee "to buy and pay for at his own expense all irrigation water required for the cultivation of the land," lessor, and not lessee, was under duty of paying a permanent assessment imposed by a water users' association for the construction of a pumping plant.

2. LANDLORD AND TENANT—IN ABSENCE OF AGREEMENT, TAXES AND ASSESSMENTS MUST BE PAID BY LANDLORD.—In the absence of an agreement making it the duty of the lessee to pay taxes or assessments chargeable against the premises, the law imposes such obligation upon the landlord.

3. LANDLORD AND TENANT—LESSOR HELD ESTOPPED FROM REQUIRING LESSEE TO PAY WATER ASSESSMENT REPAYING HIMSELF FROM RENT.—In a lessee's action against lessor for damages resulting from the latter's failure to pay permanent water assessment whereby irrigation water was shut off from the farm leased, lessor was estopped from complaining that lessee did not pay the

permanent assessment and repay himself from the rent where he
had refused lessee permission to do so.

4. LANDLORD AND TENANT—LESSOR'S FAILURE TO PAY FOR IRRIGATION
HELD VIOLATION OF COVENANT FOR QUIET ENJOYMENT ON WATER
BEING WITHHELD.—The right to use water under an irrigation
project being an appurtenance to land leased, lessor's failure to
pay permanent assessment for constructing a pumping plant, by
reason of which the use of irrigation water was withdrawn from
the land, constituted a violation of the ordinary covenant of
peaceful and quiet enjoyment.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. R. C. Stanford, Judge.
Modified and affirmed.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Mr. M. T. Phelps, for Appellee.

McALISTER, J.—This action was brought by Denver Holmesley, lessee of a farm, against J. H. Barry,
its owner and lessor, to recover damages resulting
from the latter's failure to pay the "permanent water
assessment" for the premises for the year beginning
October 1, 1918. From a judgment for Holmesley
and an order denying his motion for a new trial
Barry appeals.

On August 27, 1917, appellant leased to defendant
seventy-nine acres of land, situated about twelve
miles northwest of Phoenix, for a term of two years
from October 1, 1917, with all the appurtenances, for
$2,400, payable $100 upon the 15th of each month, beginning October 15, 1917. The lease contains among
others, this provision:

"The second party [Holmesley] agrees . . . to buy
and pay for at his own expense all irrigation water
required for the cultivation of the land."

The premises are within the boundaries of the Salt
River project, and all land so situated is assessed under the by-laws of the Salt River Valley Water Users'

Association in September of each year for irrigation service, which includes the minimum charge for water—two acre-feet per acre—and for construction of pumping plant, known as the improvement or permanent assessment. These items, however, are segregated in the assessment, but are collected as one charge, which in 1918 was divided as follows: Irrigation service, $1.20 per acre; and construction of the pumping plant, $2.70 per acre.

Under the by-laws of the association this assessment is a lien on the land, and may be paid in two equal installments, October 1st and March 1st, respectively, but the two items composing it cannot be paid separately. Together they constitute one assessment, and, if not paid on these dates or before, the water service is discontinued, and on October 18th the first installment and on March 31st following the second becomes delinquent. The first year appellant paid the permanent water, but failed to do so the second, or at least until the 28th of February, 1919, five months after it became due, and during this time no water was delivered to appellee, because the rules and regulations of the Water Users' Association prohibit the service of water to those in arrears after certain dates.

Appellee's cause of action is based solely upon appellant's failure to make this payment. He alleges that because of it he received no water for irrigation from October 1, 1918, to February 28, 1919, which greatly depreciated and rendered of no value whatsoever his leasehold interest in the premises, to his damage in the sum of $500. He pleads further two items of special damage, which it is alleged resulted naturally and inevitably from appellant's neglect or failure to pay or permit appellee to pay the permanent water assessment, to wit: $1,500, due to appellee's inability, because of a total lack of water for irrigation during this five months, to mature the first

crop of alfalfa—the same being a total loss—and also
to plant barley and grow a forage crop; $780, due to
the fact that he was compelled to and did remove
from the premises twenty-six head of dairy stock
and pasture them elsewhere. Upon these three items
he recovered a verdict for $1,250, and judgment was
entered accordingly.

A number of errors are assigned, but they deal
principally with the instructions, those given as well
as those requested and refused, and present in differ-
ent ways the one or two vital questions involved.
The first of these is whether under the terms of the
lease the payment of the permanent water assess-
ment was the obligation of appellant. He contends
that it was not, or at least that it is so doubtful
whether it was under the clause reading, ''The second
party agrees . . . to buy and pay for at his own ex-
pense all irrigation water required for the cultiva-
tion of the land,'' that it should not have been de-
termined by the court, but have been submitted to the
jury. The court instructed, however, that if appel-
lant failed to pay the permanent water assessment,
and this failure deprived appellee of the right to the
use of water for the irrigation of the premises and
resulted in damage to him, he was entitled to a ver-
dict. This was based on a correct construction of
the lease. The parties themselves had so construed it
because appellant paid this assessment the first year
at the proper time, and when requested by appellee
to do so the second, before the water service was dis-
continued, admitted that it was his business, but stated
that he would attend to it when he got ready. The
language of the lease is that appellee agrees to pay
for ''all irrigation water required for the cultivation
of the land,'' and the only water required was that
for which the minimum charge of $1.20 per acre paid,
to wit, two acre-feet per acre. The other portion of
the assessment, $2.70 per acre, was, according to the

testimony of Mr. Henshaw, secretary of the Water Users' Association, for the construction of the pumping plant or improvement, and constituted what is called the permanent assessment; and clearly an agreement to pay for "all irrigation water required for the irrigation of the land" does not include an agreement to pay a charge of this kind.

Besides, the assessment, being a lien upon the land, very much in the nature of a tax lien, could have been enforced, if necessary, by a sale of the premises, and, in the absence of an agreement making it the duty of the lessee to pay the taxes or assessments chargeable against the premises, the law imposes this obligation upon the landlord. 24 Cyc. 1074; *East Tennessee, V. & G. R. Co.* v. *Morristown* (Tenn. Ch. App.), 35 S. W. 771; *Hart* v. *Hart,* 117 Wis. 639, 94 N. W. 890. Appellant therefore was relieved of the payment of the minimum charge only by virtue of appellee's agreement assuming it, for, had not this or some similar provision been inserted in it, the lease would have been properly construed as containing an implied covenant on his part to pay it (*Trimble* v. *City of Seattle,* 64 Wash. 102, 116 Pac. 647), for, while it might appear from the evidence that the permanent water assessment only became a lien on the land, the record being silent as to whether the minimum charge for water was similarly secured, yet the latter as effectively as the former became a part of the complete assessment which was payable and collectible as a whole, and necessarily a lien could not attach to a fraction of this assessemnt and leave the remainder unaffected.

Appellant contends chiefly, however, that even though the payment of the permanent assessment was his obligation, it was nevertheless appellee's duty, since it was his privilege, to advance it and then repay himself from the rent, in order that his damage might be minimized as much as possible. The perma-

nent assessment of $2.70 per acre amounted on the seventy-nine acres to $213.30, the first installment of which was $106.65, and it is claimed that he could have withheld the $100 due October 15, 1918, for rent, and the balance of $6.65 from that due November 15, 1918, but it appears from appellee's testimony that during the month of October, 1918, he sought appellant's permission to do this and was denied it at least until he should discharge his ranch foreman with whom appellant had had some disagreement, which appellee refused to do, inasmuch as his services were satisfactory. Under these circumstances appellant was estopped from complaining that appellee did not pay the permanent assessment, or asking that his damage for his failure to do so be lessened. *Park* v. *Ensign,* 10 Kan. App. 173, 63 Pac. 280. It is true appellee could have paid this assessment and obtained water for the premises, because the Water Users' Association would have accepted the money for it from him, but his duty to use reasonable precaution to avert threatened or lessen actual injury did not require him to perform the covenants of the other party to the lease to accomplish this purpose, especially after appellant had practically denied him the privilege of doing so, for, as said by the court in *Timmons* v. *McKinzie,* 21 Ariz. 433, 189 Pac. 627, in approving the following instruction regarding a covenant of the landlord to put fences and ditches in good condition:

"Contracts are presumed to be made for some particular reason. If the plaintiff contracted in the lease to put the fences and ditches in good condition, the presumption of the law is that there was some reason for such covenants on his part, and *he is strictly held to the fulfillment of the same. He cannot avoid the obligation or shift it to the shoulders of the lessee,* and, if the lessor violates said covenant so that the lessee is deprived of the use of the premises as contemplated, then in that case the lessee would be en-

titled to damages for all his actual loss sustained, included in which would be the rent paid, if any.''

It will be observed that the covenants violated by the lessor, Timmons, were expressed in the lease. In this case also appellant expressly demised and leased in addition to the premises the appurtenances thereto, and among these, though not specially mentioned, was the right to the use of water for the premises under the Salt River Valley project, and this could not be enjoyed except by the payment of the permanent water assessment. When, therefore, appellant failed to make this payment, he in effect withdrew this appurtenance from the lease and deprived appellee of it, thus rendering the premises themselves of little or no value to him. The ordinary covenant of peaceful and quiet enjoyment, implied in all leases of this kind and as binding as though expressed, was likewise violated by appellant's failure to keep this appurtenance alive, because without it there could be no enjoyment of the premises in the manner contemplated by both parties to the contract.

There are several assignments based on instructions dealing with the rule measuring damages, but they are predicated upon the contention that it was appellee's duty to pay the permanent water assessment and then to repay himself from the rent, notwithstanding appellee's testimony that appellant had denied him this privilege, but, inasmuch as this duty did not under the circumstances devolve upon appellee, it is unnecessary to discuss them.

The judgment allows interest from March 20, 1918, but appellee admits, as contended by appellant, that this is error, and offers to remit the interest from that date until March 20, 1919. The judgment is modified to this extent, and with this modification stands affirmed.

ROSS, C. J., and FLANIGAN, J., concur.