[Civil No. 4208.  Filed November 12, 1940.]

[107 Pac. (2d) 212.]

SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. MARICOPA COUNTY, a Political Subdivision and Municipal Corporation of the State of Arizona, and ED OGLESBY, Treasurer and Ex-officio Tax Collector of Maricopa County, Arizona, Appellees.

248

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, Deputy County Attorney, for Appellees.

LOCKWOOD, J.—Southern Pacific Company, hereinafter called plaintiff, brought suit against Maricopa County and Ed Oglesby as treasurer and ex-officio tax collector thereof, hereinafter called defendants, to recover certain taxes paid under protest. There were two causes of action set up in the complaint, and judgment eventually going for defendants, this appeal was

taken. We consider the two causes of action separately.

The first was to recover taxes paid by plaintiff under protest, for the benefit of Buckeye union high school district, on property owned by it in common school district number 47. A demurrer to the complaint was sustained, and plaintiff electing to stand on its complaint, judgment was rendered in favor of defendants. The facts as stated in the complaint are, in substance, as follows:

Prior to July 1, 1929, there were two common school districts in Maricopa County, known as districts 33 and 47. There also existed a high school district known as Buckeye high school district, the boundaries of which were co-extensive with the then boundaries of district 33. On or about July 1, 1929, Buckeye high school district enlarged its boundaries by adding thereto common school district 47. At some time after the formation of the union high school district, as above, common school district 47 enlarged its boundaries, without submitting the matter to the vote of the electors and property taxpayers of the district taken in by the enlargement, and without the assent of a majority of the taxpayers and qualified electors so taken in. The portion thus annexed to common school district 47 contained 8.21 miles of plaintiff's railroad. No action whatever was taken by the Buckeye union high school district to enlarge its boundaries to include such territory, except in so far as they were enlarged automatically by the action of common school district 47, as above set forth. Thereafter, in the year 1937, the board of supervisors of Maricopa County, hereinafter called the board, levied and assessed a tax upon the said 8.21 miles of railroad above referred to, for the cost of maintenance of Buckeye union high school district. This tax was paid under protest, and it is on a recovery of the first installment

thereof that the first cause of action in the present suit is based.

The determinative issue is whether the area containing the 8.21 miles of railroad above referred to became automatically a part of Buckeye union high school district by reason of its annexation to common school district 47. This involves an examination of the statutes regulating the annexation of territory to common school districts and the establishment and enlargement of union high school districts. Those particularly pertinent to the situation are sections 999 and 1003, Revised Code of 1928, which read, respectively, so far as material, as follows:

"*Change of boundaries.* When ten or more qualified school electors residing in any district desire that the boundaries of said district be changed they shall present a petition to the county school superintendent, setting forth the change of boundaries desired, and the reasons therefor. When such petition is filed with the superintendent, he shall approve or disapprove and transmit the same to the board of supervisors, whose action shall be final; . . .

"*Annexation of common school district to high school district.* A common school district contiguous to any high school or union high school district, may annex itself to such district, when a majority of the school electors of the common school district present a petition to the trustees of the high school district to which they desire to be annexed, *setting forth the boundaries of said district to be annexed.* Said petition, if approved by the board of trustees of the district to which the annexation is to be made, shall be transmitted with the indorsement of said board of trustees thereon, to the county superintendent of schools. The electors of the high school district have fifteen days thereafter, to make and file a protest against such annexation; if a majority of such electors file such protest, the annexation shall not be made; if a protest is not so made and filed, the county superintendent of schools shall make his records of the boundaries of the

high school district conform to the petition of the electors of the common school district and notify the board of supervisors thereof, and on and after the first day of July following, said district shall become a part of the high school or union high school district to which it petitioned to be annexed.'' (Italics ours.)

■■ So far as the complaint shows, section 999, *supra,* was strictly followed when common school district 47 annexed the territory containing the property on which the taxes were paid under protest by plaintiff. But, it is alleged, and we must assume for the purpose of the demurrer it is true, that there was no attempt to comply with section 1003, *supra,* so far as the territory thus added was concerned. While there is no explicit provision of the statute declaring whether the annexation of territory to a common school district within an already existing union high school district automatically includes the annexed territory within the high school district, we think the reasonable implication from the provisions of section 1003, *supra,* is that it does not. Union high school districts are formed of two or more common school districts. When, as in the present case, a high school district already exists, the only way in which a common school district may become a part of the high school district is set forth in section 1003, *supra.* A petition must be filed representing a certain proportion of the voters of the district, and the petition must show specifically the boundaries of the district annexed. Thereafter an election must be held to determine whether the union high school district shall be formed. If the election approves, the new union high school district is established, but it is established with definite boundaries consisting of the two or more districts as they exist at the time of the election. If another common school district desires thereafter to annex itself to the high school district, another petition must be filed and the

same proceeding taken. It is clear to us that the statutes contemplate that whenever additional territory is added to a union high school district, the voters of both the annexed territory and the existing high school district must have a chance to be heard thereon, either by an election or by a protest, as set forth in section 1003, *supra*. Were it not for this, one common school district could force into a union high school district, of which it was a member, a large area of territory inhabited, perhaps, by a considerable population, without the voters of the existing high school district having any chance to be heard thereon.

We are of the opinion that under our statutes the property of plaintiff above referred to was not legally included in the boundaries of Buckeye union high school district, and the board, therefore, had no right to levy a tax thereon for the purpose of such high school. The court should have overruled the demurrer to the complaint in the first cause of action.

The second cause of action was based upon a different situation. The legislature of Arizona, in section 21 of chapter 77, article II of Laws of 1935, as amended by section 8 of chapter 2 of the First Special Session, Laws of 1937, provided for the apportionment of a certain part of the state sales tax to the various counties, and also provided, in the following language, as to how such proceeds should be used by the counties:

"Said tax accruing to the counties shall be used by the counties for the following purposes in the order named: first, in the payment of principal and interest *due* on any bonds issued by the county; second, in the payment of outstanding warrants issued by the county in years preceding the year in which the tax is received, and the balance remaining after the payment of interest and principal due on said bonds and on said outstanding warrants, shall be credited to the general fund of the county. The commission, on or before the first Monday of July of each year, shall estimate the

anticipated tax moneys to be collected under this article payable to each county of the state under this article during the ensuing fiscal year, and shall forthwith transmit such estimate to each county treasurer. Each county board of supervisors shall include such estimate in such county's budget in its estimate of receipts from sources other than property taxes. No debt, obligation or liability shall be paid or liquidated from any portion of said tax collected under this article which is credited to the county general fund unless it be for an item or purpose specific in amount included in said budget.'' (Italics ours.)

The board, in its August, 1937, meeting, budgeted the sum of $813,750 to be raised by *ad valorem* property taxation for the purpose of meeting payments of interests on bonds and installments of principal on bonds to become due during the fiscal year 1937–1938, none of which was delinquent at the beginning of the fiscal year. The tax commission, before the adoption of the budget, had certified that the probable amount which Maricopa County would receive from the sales tax during that year would be $580,540.90.

It is the contention of plaintiff that the board should have budgeted and applied all of the proceeds of the sales tax, as above, on the $813,750 required to pay interest and principal on bonds falling due during the fiscal year and should have levied a property tax for that purpose only for the difference between the estimated proceeds of the sales tax and the $813,750. The board, however, took the view that the statute regarding the application of the sales tax to bonds due referred only to bonds which were actually due and payable at the beginning of the fiscal year, and not to bonds and interest becoming due and payable at a later time in the year, and, therefore, made no estimate for applying any portion of the sales tax to the latter, and used it instead for the purpose of paying delinquent principal and interest and outstanding county war-

rants, the effect of which was that the property tax on plaintiff's property for the year 1937 was $50,856.18 more than it would have been if the board had applied the entire proceeds of the sales tax to the payment of interest and principal on bonds, in accordance with the contention of plaintiff. Plaintiff, therefore, paid its taxes, which it considered excessive for the reasons aforesaid, under protest, and in its second cause of action seeks to recover the first installment thereof.

The question is as to the meaning of the phrase "first, in the payment of principal and interest *due* on any bonds issued by the county." If, by this, is meant principal and interest which would *become* due during the fiscal year in which the sales tax was received, then the board should have applied the entire proceeds of the sales tax to the payment of such bonds, for admittedly over $800,000 was to become due during the year. If, on the other hand, it means, as contended by the board, it was only required to be applied to principal and interest which was actually due and payable at the beginning of the fiscal year, then it properly levied the tax of which plaintiff complains and was authorized to use the proceeds of the sales tax as it did for the payment of delinquent bonds and outstanding county warrants, the balance going to the general fund of the county.

The issue then narrows itself to the meaning of the word "due" as used in section 21, *supra*. We have held that, generally speaking, language in a statute is to be given the meaning in which it would be understood by the ordinarily intelligent man, unless it is clearly used in a technical sense. In Webster's International Dictionary we find the word "due" given many definitions, but that which is especially applied to it when it is used in connection with financial transactions is as follows:

"Having reached the date at which payment is required; payable;—said especially of a note or obligation in which the time for payment is specified."

■ We think this is the sense in which an ordinarily intelligent man would take a statement that a certain obligation was due, to wit, that it was immediately payable and not that it would be payable at a definite or indefinite time in the future. When an ambiguity exists in a statute, we are permitted to take many things into consideration in its construction, and among them is the background which led up to its enactment.

It is a well-known fact that for several years in the past municipal obligations had frequently been in default, although fortunately not so much in Arizona as in other communities, and that one of the main motivating reasons for diverting state revenue to the benefit of the counties was to maintain the credit of the latter. The best way in which this could be done was by taking care of their past-due obligations. That this was the intent of the legislature is further shown by the fact that the second purpose to which the sales tax was to be applied was the taking up of outstanding county warrants of the previous year which, in substance, were principal and interest in default.

■■ We are of the opinion that taking all these things into consideration, the principal and interest "due" to which the proceeds of the sales tax was first to be applied was that which was due at the beginning of the fiscal year, and not the obligations which would become due at some time in the future, and that under the act it was the duty of the board, if no such principal and interest on county bonds was "due" at the beginning of the year, to budget the sales tax to county warrants unpaid, and any remainder to the general fund in the manner in which the record shows it did proceed. Such being the case, plaintiff is not en-

titled, by its second cause of action, to recover the taxes which it paid under protest.

The judgment of the trial court is affirmed as to the second cause of action, but is reversed as to the first, and remanded with instructions to overrule the demurrer thereto, and for such further proceedings as may be necessary.

ROSS, C. J., and McALISTER, J., concur.

[Civil No. 4209.   Filed November 12, 1940.]

[107 Pac. (2d) 216.]

SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. MARICOPA COUNTY, a Political Subdivision and Municipal Corporation of the State of Arizona, and ED OGLESBY, Treasurer and Ex-officio Tax Collector of Maricopa County, Arizona, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, Deputy County Attorney, for Appellees.