[Civil No. 4642. Filed May 1, 1944.]

[148 Pac. (2d) 824.]

MARICOPA COUNTY, a Municipal Subdivision and Municipal Corporation of the State of Arizona, Appellant, v. SOUTHERN PACIFIC COMPANY, a Corporation, Appellee.

Mr. Harold R. Scoville, the then County Attorney and Mr. Leslie C. Hardy, Special Counsel for Maricopa County, for Appellant.

Messrs. Ellinwood & Ross and Mr. Norman S. Hull, for Appellee.

McALISTER, C. J.—This is an action by the Southern Pacific Company, hereinafter called plaintiff, against Maricopa County, hereinafter called defendant, for the recovery of taxes paid for the year 1940, under protest. The defendant moved for a dismissal of the complaint on the ground that it fails to state a claim against the defendant upon which relief can be granted in this: that whereas plaintiff sues to collect a tax levied for the year 1940, for the benefit of the Buckeye Union High School District, nevertheless the cause of action asserted in said complaint by plaintiff is in truth and effect a collateral attack upon the validity of the organization of said Buckeye Union High School District, which the law will not permit plaintiff to maintain.

The tax is on property owned by plaintiff in common school district No. 47. A motion by defendant to

dismiss the complaint was denied and the plaintiff elected to stand thereon. Judgment was rendered in favor of the plaintiff and the defendant appeals.

The facts of the case are identical with those in *Southern Pac. Co.* v. *Maricopa County,* 56 Ariz. 247, 107 Pac. (2d) 212, decided by this court in November 1940, the only difference being that that case was to recover the taxes paid for 1937, whereas this case is to recover the taxes paid for 1940. The record shows that prior to July 1, 1929, there were two common school districts in Maricopa County known as district No. 33 and district No. 47. There also existed a high school district known as Buckeye High School District, the boundaries of which were identical with those of common school district No. 33. About July 1, 1929, the Buckeye High School District enlarged its boundaries by adding thereto common school district No. 47. Some time after the formation of the union high school district, as above, common school district No. 47 enlarged its boundaries by annexing the territory of the plaintiff containing 8.21 miles of its railroad. The addition of this 8.21 miles was accomplished without submitting the matter to the vote of the electors and property taxpayers of the district taken in by the enlargement and without the assent of a majority of the taxpayers and qualified electors so taken in. No action whatever was taken by the Buckeye Union High School District to enlarge its boundaries to include such territory except insofar as they were enlarged automatically by the action of common school district No. 47 in annexing the 8.21 miles.

Thereafter in the year 1940, the board of supervisors of Maricopa County levied and assessed a tax upon the 8.21 miles of railroad above referred to for the cost of maintenance of Buckeye Union High

School District and this tax was paid under protest. This action was brought to recover it.

The determinative issue is whether the 8.21 miles of railroad above referred to became automatically a part of Buckeye Union High School District by reason of this annexation to common school district No. 47. This depends on the statutes regulating the annexation of territory to common school districts and the establishment and enlargement of union high school districts. Those particularly pertaining to the situation are sections 54–404 and 54–408, Arizona Code Annotated 1939, and read respectively as follows:

"*Change of boundaries.*—When ten (10) or more qualified school electors residing in any district desire that the boundaries of said district be changed they shall present a petition to the county school superintendent, setting forth the change of boundaries desired, and the reasons therefor. When such petition is filed with the superintendent, he shall approve or disapprove and transmit the same to the board of supervisors, whose action shall be final; provided, that when a subdivision of a city or incorporated town lies outside of the school district including such city or town, then a majority of the school electors of said subdivision may present a petition to the trustees of the district to which they desire to be annexed, setting forth accurately the boundaries of said proposed territory to be annexed, and said petition, if approved by the board of trustees, shall be transmitted with their indorsement thereon to the county superintendent, who shall make his records of boundaries to conform, and so notify the board of supervisors, and, on and after the first day of July following, said subdivision shall become a part of the city or incorporated town district."

"*Annexation of common school district to high school district.* A common school district contiguous to any high school or union high school district, may annex itself to such district, when a majority of the school electors of the common school district present

a petition to the trustees of the high school district to which they desire to be annexed, setting forth the boundaries of said district to be annexed. Said petition, if approved by the board of trustees of the district to which the annexation is to be made, shall be transmitted with the indorsement of said board of trustees thereon, to the county superintendent of schools. The electors of the high school district have fifteen (15) days thereafter, to make and file a protest against such annexation; if a majority of such electors file such protest, the annexation shall not be made; if a protest is not so made and filed, the county superintendent of schools shall make his records of the boundaries of the high school district conform to the petition of the electors of the common school district and notify the board of supervisors thereof, and on and after the first day of July following, said district shall become a part of the high school or union high school district to which it petitioned to be annexed.''

■ In *Southern Pac. Co.* v. *Maricopa County, supra,* where the facts were identical with those in this case, except it was for taxes of a different year, the court had the following to say [56 Ariz. 247, 107 Pac. (2d) 214]:

''So far as the complaint shows, section 999 (54–404), *supra,* was strictly followed when common school district 47 annexed the territory containing the property on which the taxes were paid under protest by plaintiff. But, it is alleged, and we must assume for the purpose of the demurrer it is true, that there was no attempt to comply with section 1003 (54–408), *supra,* so far as the territory thus added was concerned. While there is no explicit provision of the statute declaring whether the annexation of territory to a common school district within an already existing union high school district automatically includes the annexed territory within the high school district, we think the reasonable implication from the provisions of section 1003 (54–408), *supra,* is that it does not. Union high school districts

are formed of two or more common school districts. When, as in the present case, a high school district already exists, the only way in which a common school district may become a part of the high school district is set forth in section 1003 (54–408), *supra*. A petition must be filed representing a certain proportion of the voters of the district, and the petition must show specifically the boundaries of the district annexed. Thereafter an election must be held to determine whether the union high school district shall be formed. If the election approves, the new union high school district is established, but it is established with definite boundaries consisting of the two or more districts as they exist at the time of the election. If another common school district desires thereafter to annex itself to the high school district, another petition must be filed and the same proceeding taken. It is clear to us that the statutes contemplate that whenever additional territory is added to a union high school district, the voters of both the annexed territory and the existing high school district must have a chance to be heard thereon, either by an election or by a protest, as set forth in section 1003 (54–408), *supra*. . . .

"We are of the opinion that under our statutes the property of plaintiff above referred to was not legally included in the boundaries of Buckeye union high school district, and the board, therefore, had no right to levy a tax thereon for the purpose of such high school. The court should have overruled the demurrer to the complaint in the first cause of action."

Notwithstanding the holding of the court in the foregoing decision, the defendant contends that it erred in denying its motion to dismiss and in ordering judgment for plaintiff, for the reason that an action will not lie by a taxpayer to recover taxes paid under protest, upon the asserted claim that the tax is void, because the property taxed was not lawfully included within the school district for whose benefit the tax was levied, when it appears that the disputed

area within the school district, for whose benefit the tax is levied, had a *de facto,* if not a *de jure,* existence at the time the tax was levied.

It is deducible from the complaint, the defendant claims, that Buckeye Union High School District did exercise dominion and power, under color of law, over the area annexed to the Buckeye Union High School District, resulting from the enlargement of school district No. 47. It appears that the board of education of that district exercised the authority of submitting to the county school superintendent the estimates of the amount needed by Buckeye Union High School District for the year 1940; that the county school superintendent exercised the authority, under the statute, of submitting to the board of supervisors an estimate of the funds needed by Buckeye Union High School District for the fiscal year 1940; and the board of supervisors of Maricopa County exercised the authority of levying a tax upon these estimates, and actually did levy a tax upon the 8.21 miles of plaintiff's property located within the area, for the benefit of the Buckeye Union High School District. Plaintiff's suit, therefore, is for taxes levied upon the property located in that annexed area, which were levied for the benefit of Buckeye Union High School District. The defendant says some action must have been initiated, though, assuming that it was not within the strict requirements of the law, which lead the public officials above named to conclude that the Buckeye Union High School District included the area annexed to school district No. 47. These facts, it contends, are sufficient to constitute Buckeye Union High School District as a *de facto* union high school district in its relation to the area annexed, thereby justifying it in assuming and exercising the powers which the law extends to a *de facto* public body. If the area annexed to school district No. 47 was never

lawfully included within Buckeye Union High School District, the defendant expresses the view, that question cannot be litigated in an action to recover taxes, but may be asserted only in an action in *quo warranto* initiated by the Attorney General or county attorney or by an individual upon their refusal to bring action. Secs. 28–301, 28–302, 28–303, Arizona Code Annotated 1939. The rule is stated in 24 R. C. L. 565, sec. 8, as follows:

"*De Facto Districts.* The acts of a *de facto* school district, one operating under color of right, are valid. If a school district has been formed under color of law its legality can only be determined by a suit brought for that purpose in the name of the state, or by some one under the authority of the state, who has a special interest affected by the existence of such corporation, and the fact that the complainant is a taxpayer is not sufficient. It is generally stated that the legality of the formation of a school district can be determined only in a direct proceeding and cannot be questioned collaterally."

It is the defendant's position that the Buckeye Union High School District has actually exercised the powers and franchises of a school district over the area questioned by plaintiff and under what appears to be a universal rule constituted the union high school district one of *de facto* existence with reference to the area questioned. *Hamilton* v. *San Diego County, et al.,* 108 Cal. 273, 41 Pac. 305; *In re Short,* 47 Kan. 250, 27 Pac. 1005; *Van Wagener* v. *MacFarland,* 58 Cal. App. 115, 208 Pac. 345. In Dillon on Municipal Corporations, 5th Ed., sec. 67, the rule is summarized as follows:

"In public affairs, where the people have organized themselves, under color of law, into the ordinary municipal bodies, and have gone on year after year, raising taxes, making improvements, and exercising their usual franchises, their rights are properly re-

garded as dependent quite as much on acquiescence as on the regularity of their origin. . . . "

The complaint, however, alleges that Buckeye Union High School District did not "take any action toward enlarging its boundaries in accordance with the enlarged boundaries of said common school district No. 47" and this allegation must be taken as true for the purpose of this motion. In addition, this court held in the former case of Southern Pac. v. Maricopa County, that the 8.21 miles of plaintiff's railroad, which common school district No. 47 annexed to itself, "was not legally included in the boundaries of Buckeye Union High School District, and the board, therefore, had no right to levy a tax thereon for the purpose of such high school." This is undoubtedly *res judicata* of the fact that Buckeye Union High School District did not include in its boundaries the 8.21 miles of plaintiff's railroad. This opinion was followed in *Ross* v. *School Dist. No. 16 Pima County,* 60 Ariz. 9, 130 Pac. (2d) 914. If the high school district had performed any of the acts that the statute requires of it to make the area a part of the high school district, it might be said that it had a *de facto* existence. But according to the findings of the court in the former case, and the allegations of the complaint, nothing whatever was done to bring it into the high school district. That being true, it did not have even a *de facto* existence and the plaintiff was justified in treating the area as no part of the high school district.

If the plaintiff had paid the taxes for some years without protest, where nothing the statute requires to make the area a part of the district had been done, it would perhaps be deemed to have acquiesced in the situation and held estopped from objecting to it, but here the plaintiff has not acquiesced but has paid the taxes on 8.21 miles of railroad un-

der protest from the first, and filed suit for their recovery practically every year. Under these circumstances plaintiff is not estopped from claiming the disputed area is no part of the union high school district.

In *Nelssen* v. *Electrical District No. 4, etc.*, 60 Ariz. 145, 132 Pac. (2) 632; Id., 60 Ariz. 175, 133 Pac. (2d) 1013, this court used the following language, and we think the rule is peculiarly applicable here, when enjoining future tax levies on homstead lands which had never been included legally within the district:

" . . . We, therefore, consider the issue of whether the district has a right to assess and levy future taxes against the land in question. This depends primarily upon whether it was properly included within the district when it was organized in 1929, or has legally become a part thereafter, for obviously if it is not legally a part of the district, no district taxes can be levied against it. . . . " 132 Pac. (2d) at page 635.

"Our attention has not been called to any law requiring a landowner of said district to pay a tax on land therein that has never been legally included in the district. . . . The asserted right by the district's officers to impose the tax on all such land is not based on any law but is wholly unauthorized by any law. While the language of section 73–841 is very broad and comprehensive, it cannot well be construed as requiring a property owner to pay a claim for taxes, when there is no semblance of authority for its imposition, before he may defend against it." 133 Pac. (2d) 1013.

Whether a suit for taxes for one year is a bar to an action for the taxes of a subsequent year, the federal and state courts do not agree. Chief Justice Taft, in *United States* v. *Stone & Downer Co.*, 274 U. S. 225, 47 Sup. Ct. 616, 617, 71 L. Ed. 1013, said:

"Judge Cooley in his work on Taxation (4th Ed.) says at pages 2648, 2649, that the state courts, differing from this court, do not generally regard an ad-

judication as to taxes for one year as making the decision of the supporting points *res judicata* for the following years." The language of Cooley on that point is:

"Upon the question whether a judgment establishing liability to pay taxes for certain years is, in a subsequent action between the same parties, *res adjudicata* as to the liability for taxes of a succeeding year when the facts affecting the liability are the same in the two cases, the authorities do not agree. It is held in some states that the judgment for a tax is conclusive as to that tax merely, and in suits for taxes of other years is important only as a precedent. Decisions of the federal supreme court maintain the contrary doctrine, but have not met the approval of the state tribunals. Of course an adjudication as to the validity of taxes binds the parties thereto in later suits involving the same taxes."

In *United States* v. *Stone & Downer Co., supra,* is found an extensive note upon the question beginning at page 1013 of 71 L. Ed. The rule of *res judicata* is there developed as applied by the federal and state courts and at page 1018, the author indicates its application to tax actions as follows:

"1. *Res judicata not applied.*
"The doctrine has generally not been applied, even by the state courts, in respect to a tax for another year than that directly involved in the previous judgment, unless all the connditions have remained the same, and this notwithstanding the liability to tax has sometimes turned upon whether the property is exempt, some of the state courts apparently having taken the view that a judgment as to a tax for one year should never be permitted to bar a suit in reference to a tax for another year."

Then follows decisions from a number of states and from England and Canada.

After having held in *Keokuk, etc. R. Co.* v. *State of Missouri,* 152 U. S. 301, 14 Sup. Ct. 592, 38 L. Ed.

450, that a former suit was no bar to a subsequent action, the United States Supreme Court, in the case of *City of New Orleans* v. *Citizens' Bank,* 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202, took the opposite view, though it did not expressly overrule the Keokuk case. It held definitely in *United States* v. *Stone & Downer Co., supra,* that a previous suit was *res judicata* of a subsequent suit for taxes for a later year, though that court in *Union & Planters' Bank* v. *City of Memphis,* 189 U. S. 71, 23 Sup. Ct. 604, 47 L. Ed. 712, finally held that the federal courts would apply the rule adopted by the courts of the state with respect to the application of the doctrine of *res judicata* to actions involving taxes.

 Notwithstanding "under the principle that successive causes of action may be brought on separate claims due at different times, the judgment in an action relating to the taxes on property for one year is not generally a bar to an action to recover the taxes for another year on the same property, *although it may be conclusive as to a particular question involved.*" 34 C. J. 967, sec. 1381. The former judgment may not be conclusive as to the taxes for the year 1940, yet it is conclusive as to the "particular question" that the 8.21 miles did not automatically become a part of the Buckeye Union High School District.

The judgment is affirmed.

ROSS and STANFORD, JJ., concur.