270 P.2d 1090

**FOVARGUE et ux. v. SINGER.**

No. 5825.

Supreme Court of Arizona.

June 1, 1954.

Frank J. Barry, Jr., Tucson, for appellants.

Ray F. Harris, Tucson, for appellee.

UDALL, Justice.

Plaintiff Norris R. Singer brought suit against his landlords Irwin P. Fovargue and Florence H. Fovargue, seeking a declaratory judgment construing the terms of a lease, and seeking the recovery of certain taxes he had paid on personal property leased from the Fovargues. Plaintiff had judgment and defendants appeal. We shall refer to the parties by name or as lessee and lessors.

Howard and Mildred Crawford were the original owners of the property here involved, and on March 5, 1946 they leased it to Ben Malkin, Oscar Lubin and Louis Eidelberg. By mesne conveyances the interest of the Crawfords has come to the Fovargues, lessors, here, and by mesne assignments the interest of Malkin, Lubin, and Eidelberg has come to Singer, lessee here.

·At the time of leasing the land was vacant and the lessees contemplated erecting and operating a drive-in cafe. After describing the premises, the lease continues as follows:

"To Have And To Hold the same to the said lessees from the 5th day of March, 1946 to the 1st day of May, 1956, and said lessees, in consideration of leasing the premises as above set forth, covenant and agree with the lessors to pay said lessors, as rent for the same, the sum of Eight Thousand ($8,000) Dollars, cash in hand upon the execution of this Lease, and to construct a drive-in cafe and fountain building at a cost of not less than $5,500.00 on said premises in accordance with plans and specifications to be agreed upon between the parties hereunto; and to place not less then $1,900.00 worth of cafe and fountain equipment in said building for the use of the lessees thereby making an expenditure of at least $7,400.00 on said premises. And that the said $7,400.00, but no more, shall be provided by the lessors from the said $8,000.00 in cash.

"It Is Agreed that all buildings and cafe and fountain equipment placed on said premises during the terms of this lease, or renewal thereof, shall become the property of the lessors, and shall be covered by the terms of this lease; that the lessees shall keep the said buildings, and said equipment in good repair, at their expense, and shall deliver possession of them to the lessors at the . termination of this lease; that the lessees shall keep said premises, buildings and/or equipment insured, at all times, against loss by fire, theft, storms, public liability and property damage in the principal amount of not less than $6,000, in an insurance company or insurance companies acceptable to the lessors, and naming the lessors as the insured or beneficiaries thereunder; that in case of loss by fire or destruction of said building and/or equipment, the operation of this lease shall not be affected, but the proceeds from insurance benefits shall be used towards the rebuilding or replacement of the damaged property without delay; that additions or alterations in the structure of buildings or equipment may be made from time to time by the lessees at their own expense, subject to the approval of the lessors; *that the lessors shall have no obligation of expense, whatsoever, on the premises, for the term of this lease, except as expressed hereinabove;* that the lessees shall not maintain any signs bearing the tradename of the lessees' business or of a size larger than 3' x 5' without the approval of the . lessors; and that the lessees will keep the drive-in open for business at least during the time when the miniature golf course adjoining is open for business." (Emphasis supplied.)

We have italicized the portion which is the storm center of the controversy here.

In June, 1951, Singer acquired the leasehold interest. Soon thereafter he was billed for taxes due for the current year in the amount of $172 on the personal property situate in and used in the operation of the drive-in cafe, which personal property is admittedly the property of the lessors. The lessee refused to pay the taxes, contending it was the lessors' duty to do so, but the

lessors refused and the sheriff gave notice the property would be seized and sold to satisfy the tax demand, whereupon the lessee paid the taxes, interest, and costs.

Acting as his own attorney, Singer then brought suit against Fovargue in the justice court, Tucson precinct No. 1, to recover the amount of taxes so paid. The lessors proceeded upon the theory that assuming they were liable for the taxes, the lessee had paid them as a volunteer to whom the lessors owed no legal duty of reimbursement. Thus, relying upon the principles announced in Scoville v. Vail Investment Co., 55 Ariz. 486, 103 P.2d 662, the lessors moved to dismiss the complaint for failure to state a claim, in that it did not allege the lessee had paid the taxes at the lessors' request. The court gave the lessee an opportunity to amend and make such allegation, but when the lessee declared he could not truthfully do so, the motion to dismiss was granted and judgment was entered in effect that plaintiff take nothing and defendants recover their costs.

Thereafter Singer retained an attorney, and in August, 1952, began this action in the superior court. Count one of the complaint sought recovery of the 1951 taxes paid by the lessee, and count two sought to have the lease construed and declaratory judgment rendered thereon that the lessors were liable for the taxes during the term thereof. After trial to the court it was declared that the lease in question properly construed did not require the lessee to pay the personal property taxes but that the lessors should pay all taxes thereon, and that the lessee should have judgment against the lessors for all the taxes paid to date.

The lessors contend that the dismissal of the prior action in the justice court is a bar to any further action by the lessee. We believe that in part this position is well taken. The legislature has provided in Section 20–708, A.C.A.1939, that "The law governing the procedure in the superior courts regarding * * * judgments * * * and all other laws of procedure, so far as applicable and not otherwise especially prescribed, shall govern the procedure in justice of the peace courts." There is no special law governing the effect of dismissals in the justice courts, hence the rules of civil procedure for the superior courts are to be applied. We have construed Rule 41(b), Rules of Civil Procedure, Section 21–916, A.C.A.1939, in Anguiano v. Transcontinental Bus System, 76 Ariz. 246, 263 P.2d 305, to mean that any involuntary dismissal other than for lack of jurisdiction or improper venue operates as an adjudication on the merits unless the court otherwise directs. The lessee cites Wilson v. Lowry, 5 Ariz. 335, 52 P. 777, and Griffith v. State, 41 Ariz. 517, 20 P.2d 289, decided long prior to the adoption of our present rules, wherein we held that judgment of dismissal entered in an action after demurrer was sustained to the complaint did not bar a second suit if the demurrer went only to the merits

of the pleading. The lessee contends this rule still applies and that a dismissal for defective pleading does not bar another suit. In principle this contention is the same as that urged in the Anguiano case, supra, and rejected by us.

■ When Singer sued in the justice court he had no claim against Fovargues except for the 1951 taxes. He could not have sued for the taxes not yet due and which he had not paid, and of course that court would have had no jurisdiction of a demand in excess of $200 because of the express limitations placed upon the court by Section 20–102, A.C.A.1939. Furthermore, the justice courts have not been granted the power to render declaratory judgments, for Sections 27–701 et seq. A.C.A.1939 apply exclusively to courts of record. Nor can the lessors successfully contend that the issue of liability for taxes was a contested issue actually litigated in the justice court and resolved adversely to the lessee so that the litigated issue would be res judicata in this subsequent action. This particular application of the doctrine of res judicata is sometimes termed a "collateral estoppel", see 7A, Words and Phrases, Collateral Estoppel, p. 212; and see Maricopa County v. Southern Pac. Co., 61 Ariz. 269, 148 P.2d 824, applying the principle to an issue litigated and determined in a previous action, to wit, Southern Pac. Co. v. Maricopa County, 56 Ariz. 247, 107 P.2d 212; see also Manor v. Stevens, 61 Ariz. 511, 152 P.2d 133 at page 135;

and O'Neil v. Martin, 66 Ariz. 78, 182 P.2d 939 at page 943. We therefore perceive no bar to the present action to recover taxes subsequent to 1951, and to have the lease construed. We hold the claim for 1951 taxes is barred, but the other matters which the lessee seeks to have determined are not res judicata.

■ The final problem is, under the contract upon whom does the liability for these personal property taxes fall? We see no difference here between the real property taxes and the personal property taxes, for if the portion of the lease, supra, which states, " * * * the lessors shall have no obligation of expense, whatsoever, on the premises, for the term of this lease, except as expressed hereinabove * * *" exempts the lessors from personal property taxes it most certainly exempts them from the real property taxes. Undoubtedly the general rule is that as between the owner of property and the lessee thereof, the owner is liable for taxes in the absence of express agreement to the contrary or other overbalancing considerations which lead to that result, such as a lease in perpetuity. See 51 C.J.S. Landlord and Tenant, 360 c.; 32 Am.Jur. Landlord and Tenant, Sec. 287. See also Barry v. Holmesley, 24 Ariz. 375, 210 P. 318; Eckert v. Miller, 57 Ariz. 94, 111 P.2d 60.

■ The lessors contend that because, as between all prior parties holding under the lease in question, the lessors have paid

the real property taxes and the lessees have paid the personal property taxes, this construction is binding upon Singer by the privity of estate. However, evidence of a course of conduct is not competent to determine the meaning of terms in a writing unless there is ambiguity or doubt as to the meaning. Powers v. World's Fair Mining Co., 10 Ariz. 5, 86 P. 15, affirmed 224 U.S. 173, 32 S.Ct. 453, 56 L.Ed. 717; Rio Grande Oil Co. v. Upton Oil Co., 33 Ariz. 474, 266 P. 3. As we said in Valentine v. Shepherd, 19 Ariz. 241, 168 P. 643, 644:

"* * * Where the language used by the parties to express the terms and conditions of their contract is plain and unambiguous, their intention or understanding is to be found in their contract, and not from the ex parte assertions of either party. It is only where a contract is ambiguous or equivocal that extrinsic evidence may be resorted to for the purpose of determining the real meaning of the contract. * * *"

It is our considered opinion that in the light of the general rule that the owner of property and not the lessee is liable for the taxes in the absence of express agreement to the contrary, the expression that the lessor "is to have no obligation of expense whatsoever" does not suffice to create an ambiguity on the question of liability for taxes, and of course it does not suffice as an unambiguous express covenant that the lessee shall pay them. Under these circumstances the evidence as to prior payment of the personal and real property taxes is of no value in construing the contract, and the general rule that the owner is liable must be applied.

That portion of the judgment awarding plaintiff recovery as to the 1951 taxes is reversed; in all other respects the judgment is affirmed. Appellant to recover his costs.

Affirmed in part, reversed in part.

PHELPS, C. J., and STANFORD, UDALL, LA PRADE and WINDES, JJ., concur.