[Civil No. 4475. Filed November 9, 1942.]

[130 Pac. (2d) 914.]

MRS. P. H. ROSS, as County School Superintendent of Pima County, Arizona, et al., Appellants, v. SCHOOL DISTRICT NO. 16, of Pima County, Arizona, et al., Appellees.

Mr. J. Mercer Johnson, County Attorney, for Appellants.

Messrs. Misbaugh and Fickett, for Appellees.

McALISTER, J.—This is an appeal from a judgment setting aside, upon review by *certiorari,* the action of the county school superintendent and of the board of supervisors of Pima County, changing the boundaries of Common School District No. 10 and High School District No. 4, of that county.

The facts disclose that on May 19, 1941, there was filed in the office of the county school superintendent of Pima County, a petition, signed by more than 10 qualified electors of Common School District No. 10

and High School District No. 4 of Pima County, the boundaries of which are co-terminous, seeking to have the superintendent effect a change of the boundaries of these districts so as to include in them certain real property then a part of the adjoining School District No. 16 and certain other property then constituting unorganized territory situated north of District No. 16, totaling altogether about 5500 acres of land.

The day the petition was received, the trustees of District No. 10 and the Board of Education of High School District No. 4, the same three persons composing both boards, approved it and waived notice of a hearing thereon. On that day the superintendent set May 26, 1941, and the office of the board of supervisors, as the time and place for hearing the petition, and on the 19th, 20th and 21st of May, 1941, caused written notice thereof to be served respectively upon H. F. Vinson, Sam R. Falvey and Norman E. Gabel, the trustees of District No. 16. The hearing, attended by quite a number of qualified electors residing in District No. 16, was had on the day set and after considering the matters presented at that time, the petition, and the advantages and disadvantages that might result from granting it, the superintendent approved it and recommended its approval by the board of supervisors. Thereupon the board of supervisors notified the trustees of District 16 that the school superintendent had approved and presented to it a petition to change the boundaries of Amphitheatre School District No. 10 and High School District No. 4 in such a way as to include therein a large number of acres of land then located in District 16 and that a hearing thereon would be held before it on the 9th day of June, 1941. The hearing took place, one trustee and a number of the qualified electors of District 16 appeared, and on June 17, 1941, the board entered an order approving the action of the school superintend-

ent and voted to annex a part of District 16 to Common School District No. 10 and High School District No. 4.

Six days later, School District No. 16, and 23 qualified electors and real property owners residing therein, some of whom were owners of real property it was attempted to carve out of said District 16 and make a part of School District No. 10 and High School District No. 4, applied for and secured from the superior court of Pima county a writ of *certiorari* directing the county school superintendent and the board of supervisors of Pima county to certify to it a transcript of the record and the evidence of the proceedings had before them in passing upon the petition and that they take no further action in the matter until it had been heard and determined by the court.

After hearing the facts, the court held that the action of the school superintendent, approving the petition to change the boundaries of District No. 10 and High School District No. 4, and also that of the board of supervisors, approving the action of the school superintendent, was without jurisdiction and entered an order cancelling and setting them aside. From this judgment the school superintendent and the board of supervisors have appealed and they rely for reversal upon the contention that the provisions of the statute for changing the boundaries of school districts are sections 54–403 and 54–404, Arizona Code 1939, and that they were strictly complied with. These sections read as follows:

"54–403. *Record of boundaries.*—The county school superintendent shall, on the first day of July of each year, file with the board of supervisors a transcript of the boundaries of each school district within his county, and when said transcript is approved by the board of supervisors, the boundaries shown in said transcript become the legal boundaries of the district and shall not be changed except between April first

and July first. The boundaries of a district shall not be changed by the county superintendent unless the trustees of the districts affected have had written notice of the proposed change, and an opportunity to be heard."

"54-404. *Change of boundaries.*—When ten (10) or more qualified school electors residing in any district desire that the boundaries of said district be changed they shall present a petition to the county school superintendent, setting forth the change of boundaries desired, and the reasons therefor. When such petition is filed with the superintendent, he shall approve or disapprove and transmit the same to the board of supervisors, whose action shall be final; . . ."

■ ■ Appellants contend that when the petition signed by 10 or more qualified school electors, residing in Common School District No. 10 and High School District No. 4, asking that the boundaries of these districts be changed in such a way as to include in them a portion of the property of the adjoining Common School District No. 16 and setting forth the reasons for the proposed change was filed with the county school superintendent and that officer had given the trustees of these three districts written notice of the proposed change and an opportunity to be heard thereon, nothing else remained to be done to give the superintendent jurisdiction to pass on the petition and then transmit it to the board of supervisors for final action. It occurs to us that this was the proper procedure. The legislature has provided no other method for changing the boundaries of school districts. The contention of appellees that before the school superintendent may be held to have had jurisdiction to change the boundaries of these districts, it was necessary that there should have been presented to her for approval or disapproval, a petition asking for the change, signed by the proper number of qualified school electors of District No. 16, or at least that portion of

16 to be annexed, finds no support in the statute. The petition signed by the school electors of District No. 10 and High School District No. 4 did not of itself change the boundaries, take the property out of District 16 and annex it to these districts, or even enable the school superintendent to do this without first giving the trustees of District No. 16 an opportunity to be heard in the matter, but it merely set in motion the machinery by which this question should be decided. To require a petition from the school electors of 16, or of that portion of it sought to be annexed, in order to give the school superintendent jurisdiction to make the change, would mean that no school district boundaries may be changed when such action results in taking property from one district and annexing it to another, except when both districts agree to it. While it would be fine if such disputes could be thus amicably settled, it is very clear that such was not the theory of the legislature in setting up in sections 54–403 and 54–404 the procedure for changing the boundaries of school districts. Under these sections the fact that changing the boundaries of one district will mean a change of the boundaries of another district and result in taking property from one district and placing it in another, is immaterial. Such a result necessarily follows the changing of the boundaries of adjoining districts, but the school superintendent cannot under these sections take action having this effect until the trustees of the district which loses territory as a result of the change have had an opportunity to be heard on the matter, and the order of that officer making the change, approved by the supervisors. The legislature evidently felt in passing these two sections that these officers, being wholly disinterested and fully aware of all the facts, would look at the matter from a disinterested standpoint and take no action that would not be for the best interests

of both parties, and it must be remembered that the power of the legislature to alter, change or abolish school districts or delegate such powers to school superintendents and boards of supervisors is plenary. *Valley Center School District No. 20* v. *Hansberger,* 28 Ariz. 493, 237 Pac. 957.

■ Appellees contend that if the boundaries of the districts could be changed in such a way as to take from District 16 the property in question and annex it to No. 10, it could have been done only under section 54-402 or 54-405, Arizona Code 1939. A reading of these sections discloses that neither of them applies when it is sought merely to change the boundaries of a school district because each covers a particular situation other than that of changing boundaries. The first, entitled "New Districts," prescribes the procedure to be followed in creating new districts and the second, entitled "Annexation of districts," the method by which one school district may annex itself to another. The purpose of the petition filed with the county superintendent in this case was neither to create a new district nor annex one already in existence to another, but merely to change the boundaries of Common School District No. 10 and High School District No. 4 in such a way that certain property, then in District No. 16, would become a part of No. 10 and No. 4.

■ The order of the school superintendent, later approved by the board of supervisors, changed the boundaries of High School District No. 4 so as to include in it the same portion of District No. 16 that was placed in District 10. It does not appear whether the fact that Common School District No. 10 and High School District No. 4, even though they had co-terminous boundaries, were separate and distinct entities, entered into the consideration of this question by the school superintendent and the board of

supervisors. The record discloses that no attempt was made to follow the procedure set up in section 54–408, Arizona Code 1939, reading as follows:

"*Annexation of common school district to high school district.* A common school district contiguous to any high school or union high school district, may annex itself to such district, when a majority of the school electors of the common school district present a petition to the trustees of the high school district to which they desire to be annexed, setting forth the boundaries of said district to be annexed. Said petition, if approved by the board of trustees of the district to which the annexation is to be made, shall be transmitted with the indorsement of said board of trustees thereon, to the county superintendent of schools. The electors of the high school district have fifteen (15) days thereafter, to make and file a protest against such annexation; if a majority of such electors file such protest, the annexation shall not be made; if a protest is not so made and filed, the county superintendent of schools shall make his records of the boundaries of the high school district conform to the petition of the electors of the common school district and notify the board of supervisors thereof, . . ."

The trial court held that failure to proceed under this section rendered this portion of the order void and ineffective and, we think, properly so. The only method the statute has provided for annexing a common school district to a high school district is set forth in this section and in *Southern Pacific Co.* v. *Maricopa County,* 56 Ariz. 247, 107 Pac. (2d) 212, 214, it was held specifically that the addition of territory to a common school district, through the process of changing its boundaries when they are co-terminous with those of an existing high school district, does not automatically enlarge the latter. The court used this language:

". . . While there is no explicit provision of the statute declaring whether the annexation of territory

to a common school district within an already exist-
ing union high school district automatically includes
the annexed territory within the high school district,
we think the reasonable implication from the pro-
visions of section 1003, *supra,* is that it does not. Union
high school districts are formed of two or more com-
mon school districts. When, as in the present case,
a high school district already exists, the only way in
which a common school district may become a part of
the high school district is set forth in section 1003,
*supra. . . .*"

■ ■ Appellee contends further that the order
changing the boundaries of Districts No. 10 and No.
4 was void because the trustees of District No. 16
did not have legal notice of the proposed change and
the opportunity to be heard thereon. It is, of course,
true that the notice prescribed by 54–403, *supra,* is
jurisdictional and any order changing the boundaries
of these districts without it would be ineffective, but
that section does not say how many days notice shall
be given and, this being true, reasonable notice would
be required. The petition was filed on May 19, 1941,
and the school superintendent set the hearing for
May 26, 1941, one week later, and on the 19th gave
written notice of the proposed change and the
hearing to one of the trustees of District 16, on the
20th to a second one, and on the 21st to the third.
At the hearing, however, only one of the trustees
appeared, but a large number of its school electors,
appellants say in their brief 40, attended. The record
does not disclose that anyone raised the objection at
that time that the trustees of 16 had not been given
sufficient notice to enable them to present their side
of the question, nor was additional time asked for
this purpose. If such a request had been made by
the district and denied by the school superintendent,
followed by a showing at the trial that the parties
had been unable to bring before the superintendent

important facts bearing on the matter, it might be, notwithstanding the notice given conferred jurisdiction, that the order should have been set aside for an abuse of discretion. But nothing of this kind was done, hence the reasonableness of the notice is not before the court.

It follows, therefore, that that portion of the judgment setting aside the order changing the boundaries of Common School District No. 10 should be reversed, but that the part of it holding void and ineffective the order changing the boundaries of High School District No. 4 should be affirmed. Such is the order of the court.

LOCKWOOD, C. J., and ROSS, J., concur.