203 P.2d 618

BOYD et al. v. BELL.

No. 5046.

Supreme Court of Arizona.

March 7, 1949.

168

Odin B. Dodd, Co. Atty., of Tucson, for appellants.

Fred W. Fickett, William S. Dunipace, and Robert S. Tullar, all of Tucson, for appellee.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Pima County annulling and setting aside the proceedings had by the county school superintendent and the board of supervisors of that county, hereinafter called the superintendent and the supervisors, enlarging the boundaries of High School District No. 4 of said Pima County.

In view of the conclusions reached by this court in the instant case it is considered appropriate to give a brief history of the action taken by the above named officials and their predecessors relating to an enlargement of said high school district prior to the proceedings herein involved.

Prior to June 17, 1941, High School District No. 4 and Common School District No. 10 were coterminus. On that date, pursu-

ant to the provisions of section 54-404, A.C. A.1939, the superintendent and the supervisors approved a petition signed by more than ten electors residing in said districts for the enlargement of said Common School District No. 10 and High School District No. 4 by adding thereto a portion of Common School District No. 16 and approximately 57,500 acres of land which was theretofore unorganized territory but contiguous to District No. 16. The latter district and a number of qualified electors who were real property owners residing therein applied for and secured from the superior court of Pima County a writ of certiorari directed to the superintendent and the supervisors requiring that all records in said proceedings be presented to the court for review. A hearing was had after which the trial court set aside the proceedings for enlargement as being null and void.

From that judgment and order an appeal was taken to this court in the case of Ross v. School District No. 16, 60 Ariz. 9, 130 P.2d 914, hereinafter referred to as the Ross case, and we held that the questioned proceedings were valid as it related to the enlargement of Common School District No. 10 but were invalid as it related to High School District No. 4. The effect of said decision was to enlarge Common School District No. 10 to include a portion of Common School District No. 16 and the approximately 57,500 acres of unorganized territory adjacent thereto and to deny to High School District No. 4 an enlargement of its boundaries so that, if changed, it would be coterminus with Common School District No. 10 as enlarged. No further attempts were ever made by anyone under any of the provisions of the statute to enlarge High School District No. 4 until the present proceedings were instituted.

Other phases of the case have been before this court in other causes of action including the case of Martin v. Whiting, 65 Ariz. 391, 181 P.2d 819.

The Whiting case, supra, brought in June, 1946, and decided by us in June 1947, was a taxpayer's action in mandamus to compel the supervisors to issue a warrant to him covering a judgment for taxes paid by him, and others similarly situated, under protest and to compel the superintendent and the supervisors to fix the boundaries of High School District No. 4 as it existed prior to June 17, 1941, in compliance with the decision of this court in the Ross case, supra. The plaintiff prevailed in that action and obtained all the relief sought.

From that judgment and order an appeal was taken to this court. On said appeal, appellant sought, in effect, to collaterally attack the judgment in the Ross case. We held that this could not be done and affirmed the judgment of the lower court.

On June 27, 1947, pursuant to section 54-404, A.C.A.1939, a petition was filed with the superintendent to change the boundaries of High School District No. 4 of that

County so as to include therein that portion of Common School District No. 16 and the said 57,500 acres of land theretofore brought within the boundaries of Common School District No. 10 and to make the boundary of said high school district coterminus with said District No. 10 of said Pima County, Arizona, as it now exists. The petition was approved by the board of trustees of School District No. 10 and the board of education of High School District No. 4 (being the same persons) who waived notice of hearing thereon. On the same day, said petition was approved by the superintendent and was presented to the supervisors who on said date at a special meeting, approved the same and ordered the boundaries of said high school district changed as prayed for in the petition.

On July 1, 1947, the superintendent, pursuant to section 54-403, A.C.A.1939, filed a transcript of the boundaries of each school district within Pima County with the supervisors including a transcript of the boundaries of High School District No. 4 to conform to the petition relating thereto approved by the superintendent and the supervisors thus making High School District No. 4 coterminus with the present boundaries of Common School District No. 10.

The appellees here whose land was brought into the high school district by the change of said boundaries applied for and were granted a writ of certiorari by the superior court of Pima County for a review of the above proceedings. Upon hearing, the trial court held the proceedings void and again restored the high school district to its territorial and geographical status prior to June 17, 1941.

The questions here presented are:

1. Do the provisions of sections 54-403 and 54-404, A.C.A.1939, apply in the enlargement of the boundaries of a high school district?

2. If so, were the provisions thereof complied with in the instant case?

The appellant claims these questions should be answered affirmatively. The appellee, however, claims:

1. That the above sections have no application here but that appellant should have proceeded under the provisions of section 54-408, A.C.A.1939.

2. That even if section 54-404 is applicable in the enlargement of high school districts, appellant did not comply with the terms thereof in that: (a) No hearing of any kind was held by either the said superintendent or the supervisors and that no notice of such hearing was given to any person either by the superintendent or the supervisors. (b) That the supervisors approved said petition at a special meeting of said board on June 27, 1947, and that such meeting was held without first giving five days written notice thereof as provided by section 17-305, A.C.A.1939. (c) That said notice may not be waived.

The primary issue here was squarely presented to us in the Ross case, supra, except that in that case the appellees there claimed that such change in the boundaries of said districts could have been made only under the provisions of sections 54-402 and 54-405 instead of section 54-408. Whereas the supervisors (appellants in both cases) have consistently contended that the provisions of sections 54-403 and 54-404 provided the only method for the changing of the boundaries of both common school and high school districts and that said sections did apply to high school districts as well as to common school districts. Neither counsel claims that any other section of the Educational Act except sections 54-404 and 54-408, supra, applies in a case like this.

In the light of the construction heretofore placed upon the pertinent sections of the statutes, supra, by this court it will be necessary to analyze said statutes for the purpose of determining the legislative intent and at the same time to examine our former decisions construing the same.

It will me observed that section 54-401 of article 4 declares the basis of the educational organization of the county and state to be common school districts and high school districts. Section 54-403 provides:

"The county school superintendent shall, on the first day of July of each year, file with the board of supervisors a transcript of *the boundaries of each school district within his county,* and when said transcript is approved by the board of supervisors, the boundaries shown in said transcript become the legal boundaries of the district and shall not be changed except between April first and July first. The boundaries of a district shall not be changed by the county superintendent unless the trustees of the districts affected have had written notice of the proposed change, and an opportunity to be heard." (Emphasis supplied.)

Section 54-404, in so far as it is here applicable, provides:

"Change of boundaries.—When ten (10) or more qualified school electors residing in any district desire that the boundaries of said district be changed they shall present a petition to the county school superintendent, setting forth the change of boundaries desired, and the reasons therefor. When such petition is filed with the superintendent, he shall approve or disapprove and transmit the same to the board of supervisors, whose action shall be final; * * *."

Section 54-408 is as follows:

"Annexation of common school district to high school district.—A common school district contiguous to any high school or union high school district, may annex itself to such district, when a majority of the school electors of the common school district present a petition to the trustees of the high school district to which they desire to be annexed, setting forth the boundaries of said district to be annexed. Said petition, if approved by the board of trustees

of the district to which the annexation is to be made, shall be transmitted with the indorsement of said board of trustees thereon, to the county superintendent of schools. The electors of the high school district have fifteen (15) days thereafter, to make and file a protest against such annexation; if a majority of such electors file such protest, the annexation shall not be made; if a protest is not so made and filed, the county superintendent of schools shall make his records of the boundaries of the high school district conform to the petition of the electors of the common school district and notify the board of supervisors thereof, and on and after the first day of July following, said district shall become a part of the high school or union high school district to which it petitioned to be annexed."

The first case to come before the court was that of the Southern Pacific Co. v. Pima County, 38 Ariz. 11, 296 P. 533, hereinafter referred to as the Pima County case. An examination of the records in that case discloses the facts to be that Common School District No. 1 and High School District No. 1 then had coterminus boundaries. Certain electors of Common School District No. 1 instituted proceedings under the provisions of sections 2721 and 2722, C.C.1913 (being identical in substance with sections 54-403 and 54-404 of the 1939 A.C.A.), to have the boundaries of Common School District No. 1 changed by enlargement of said school district.

The petition of said electors was, in due course, approved by the superintendent and the supervisors. Thereafter, pursuant to the provisions of section 54-403 the superintendent filed a transcript of the boundaries of all the school districts in Pima County with the supervisors, including High School District No. 1, the boundaries of which were made to conform to the boundaries of Common School District No. 1 as enlarged. No action had been taken by High School District No. 1, as such, to have its boundaries changed. The enlargement of said school districts brought within their boundaries additional track of the Southern Pacific Company which had not theretofore been within the said boundaries. The supervisors levied taxes against the property of said school district including the additional track belonging to the railroad company to be applied on outstanding bonded indebtedness of both Common School District No. 1 and High School District No. 1.

The railroad company paid said taxes under protest and brought an action against Pima County in the superior court of that county to recover said taxes. The trial court, Honorable Fred W. Fickett presiding, sustained the demurrer of defendant Pima County to the complaint of the railroad company and judgment was entered thereon in favor of Pima County. From that judgment an appeal was taken to this court.

One of the primary questions presented to us in that case and argued at length in

the briefs was whether the assessment by the board of supervisors against said additional track of appellant railroad company for the benefit of High School District No. 1 was a valid assessment. The appellee Pima County contended, as it did in the Ross case and as it does in the instant case, that the boundaries of a high school district must of necessity be coterminus either with the common school district or if it be a union high school district, its boundaries must be coterminus with the outer boundaries of the common school districts uniting to form such a union high school district and that the taxes so levied were a valid assessment.

In affirming the judgment of the trial court, we held by implication, that the enlargement of Common School District No. 1 automatically enlarged High School District No. 1 to conform to the new boundaries of Common School District No. 1. In no other way could the levying of taxes to pay the bonded indebtedness of High School District No. 1 have been sustained.

The court said:

"There is no serious contention, at least the question is not presented by an assignment, that the change of the boundaries of the *districts* was not affected in the manner provided by paragraphs 2721 and 2722 of the Revised Statutes of Arizona 1913, Civil Code, nor that such change was not lawfully made. * * *" (Emphasis supplied.)

Our records disclose that appellee Pima County discussed this question at length in its brief and cited numerous cases from California to support its contention.

An examination of section 54-901, A.C.A. 1939, relating to the formation and establishment of high school districts, conclusively shows that the contention of the appellees in that case was correct. It provides in substance that a high school district can only be formed in one of two ways:

1. A common school district having an average daily attendance of not less than 200 pupils or an assessed valuation of not less than $1,500,000 may, by a majority vote of the qualified electors of said common school district, establish and maintain a high school.

2. That two or more adjoining common school districts having one of the above requisites may jointly unite and form a union high school district.

█ No interpretation can be given to the language used in section 54-901, supra, other than that the boundaries of the high school district must be coterminus with the boundaries of the common school district or the outer boundaries of two or more common school districts uniting to form a union high school district. Nowhere in the statute may be found any provision for the existence of a high school district which embraces only a portion of a common school district.

■ Under the plain and unambiguous provisions of section 54-408 the sole purpose of that section is to enable an established common school district to initiate proceedings to have itself annexed to an established high school district, thus creating a union high school district. Again, the intent is irrefutable that the boundaries of the newly created union high school district must embrace both the area before the annexation and the area of the common school district annexed and that the boundaries thereof must of necessity be coterminous with the outer boundaries of the two.

No mental legerdemain need be employed to reach the above conclusion. It is not even a strained construction. It is the only sound logical conclusion that can possibly be reached.

The above conclusion in no way argues that a high school district, under the laws of this state, is not a legal entity separate and distinct from the legal entity of the common school district with coterminus boundaries. We so held in Glendale Union High School District v. Peoria School District No. 11, 51 Ariz. 478, 78 P.2d 141.

■ Unquestionably a high school district is a distinct legal entity vested with such powers as are conferred upon it by article 9 of the Educational Act including the right to create a bonded indebtedness. See Morgan v. Board of Supervisors, 67 Ariz. 133, 192 P.2d 236.

The next case to come before the court involving the construction of these statutes was the case of the Southern Pacific Co. v. Maricopa County, 56 Ariz. 247, 107 P. 2d 212, 214 (hereinafter referred to as the Maricopa County case).

The facts in that case are that prior to July 1, 1929, there were two common school districts in Maricopa County in the vicinity of Buckeye known as Districts No. 33 and No. 47. There also existed a high school district in that section of the county known as the Buckeye High School District, the boundaries of which were coterminus with Common School District No. 33.

On or about July 1, 1929, in proceedings initiated by the Buckeye High School District it enlarged its boundaries by adding thereto Common School District No. 47. An examination of our files and records in that case does not disclose under what provisions of the statute the Buckeye High School District proceeded to annex Common School District No. 47. It is fair to presume, however, that it was done under the provisions of section 54-404. It appears to us that this section provides the only method for a high school district to enlarge its own boundaries. As we have observed it could not have been done under section 54-408 as that section applies only where an established common school district initiates a proceeding to annex itself to an existing high school district.

After the annexation of School District No. 47 to Buckeye High School District forming the Buckeye Union High School District, Common School District No. 47

enlarged its boundaries so that it took in additional track of the Southern Pacific Company which had not theretofore been in said District No. 47. No action was taken by the Buckeye Union High School District to enlarge its boundaries to conform thereto. Thereafter, in 1937, the board of supervisors of Maricopa County levied a tax against the said additional track of appellant railroad company for cost of maintenance of the Buckeye Union High School District. This tax was paid under protest and an action brought in the superior court of Maricopa County to recover said taxes. From the judgment and order of the court in favor of Maricopa County the railroad company appealed to this court.

The sole question presented in that case so far as we are concerned here was: "When a common school district enlarges its boundaries does it automatically enlarge the boundaries of the high school district to which it belongs?"

This court without referring to the Pima County case, supra, in effect reversed the decision in that case by holding that the enlargement of the boundaries of a common school district does not automatically enlarge the boundaries of a high school district to which it belongs. The court further stated that section 999, Revised Code 1928, now 54-404, A.C.A.1939, supra, provided the method of procedure for changing the boundaries of a common school district.

After reaching the above conclusions it then entered into a discussion of the application of section 1003, Revised Code 1928, now 54-408, supra, to the change of boundaries of high school districts and unfortunately ascribed to said statute language which does not appear therein. I quote the language of the court verbatim:

"* * * Union high school districts are formed of two or more common school districts. When, *as in the present case,* a high school district already exists, the only way in which a common school district may become a part of the high school district is set forth in section 1003, supra. A petition must be filed representing a certain proportion of the voters of the district, and the petition must show specifically the boundaries of the district annexed. *Thereafter an election must be held to determine whether the union high school district shall be formed. If the election approves, the new union high school district is established, but it is established with definite boundaries consisting of two or more districts as they exist at the time of the election.* If another common school district desires thereafter to annex itself to the high school district, another petition must be filed and the same proceeding taken. *It is clear to us that the statutes contemplate that whenever additional territory is added to a union high school district, the voters of both the annexed territory and the existing high school district must have a chance to be heard thereon, either by an election or by a protest, as set forth*

*in section 1003, supra.* Were it not for this, one common school district could force into a union high school district, of which it was a member, a large area of territory inhabitated, perhaps, by a considerable population, without the voters of the existing high school district having any chance to be heard thereon." (Emphasis supplied.)

We would not extend this decision by including the above quotation except that said interpretation was relied upon by us as authority for our decision in the Ross case, supra.

There is no provision in the Educational Act relating to boundaries of school districts requiring an election to be held except under section 54-406 providing for the consolidation of two or more common school districts, and section 54-901, supra, providing for the initial establishment of high school districts neither of which apply to the situation in this case.

The next case to come before the court was the Ross case, supra, the facts of which have been hereinabove stated. In that case the appellees School District No. 16, et al., claim that the proceedings for the change of boundaries of Common School District No. 10 and High School District No. 4 was to be found under the provisions of sections 54-402 and 54-405. Appellants claimed, as they do here, that they had properly proceeded under sections 54-403 and 54-405.

The court, in disposing of the contention of the appellants that sections 54-402 and 54-405 did not apply, said [60 Ariz. 9, 130 P.2d 917]:

"Appellees contend that if the boundaries of the districts could be changed in such a way as to take from District 16 the property in question and annex it to No. 10, it could have been done only under section 54-402 or 54-405, A.C.1939. A reading of these sections discloses that *neither of them applies when it is sought merely to change the boundaries of a school district because each covers a particular situation other than that of changing boundaries.* The first, entitled 'New Districts,' prescribes the procedure to be followed in creating new districts and the second, entitled 'Annexation of districts,' the method by which one school district may annex itself to another. *The purpose of the petition filed with the county superintendent in this case was neither to create a new district nor annex one already in existence to another, but merely to change the boundaries of Common School District No. 10 and High School District No. 4 in such a way that certain property, then in District No. 16, would become a part of No. 10 and No. 4."* (Emphasis supplied.)

The court further said, in sustaining appellant's view of the application of section 54-404 to the enlargement of common school districts:

"Appellants contend that when the petition signed by 10 or more qualified school

electors, residing in Common School District No. 10 and High School District No. 4, asking that the boundaries of these districts be changed in such a way as to include in them a portion of the property of the adjoining Common School District No. 16 and setting forth the reasons for the proposed change was filed with the county school superintendent and that officer had given the trustees of these three districts written notice of the proposed change and an opportunity to be heard thereon, nothing else remained to be done to give the superintendent jurisdiction to pass on the petition and then transmit it to the board of supervisors for final action. It occurs to us that this was the proper procedure. *The legislature has provided no other method for changing the boundaries of school districts. The contention of appellees that before the school superintendent may be held to have had jurisdiction to change the boundaries of these districts, it was necessary that there should have been presented to her for approval or disapproval, a petition asking for the change, signed by the proper number of qualified school electors of District No. 16, or at least that portion of 16 to be annexed, finds no support in the statute.* The petition signed by the school electors of District No. 10 and High School District No. 4 did not of itself change the boundaries, take the property out of District 16 and annex it to these districts, or even enable the school superintendent to do this without first giving the trustees of District No. 16 an op-portunity to be heard in the matter, but it merely set in motion the machinery by which this question should be decided. *To require a petition from the school electors of 16, or of that portion of it sought to be annexed, in order to give the school superintendent jurisdiction to make the change, would mean that no school district boundaries may be changed when such action results in taking property from one district and annexing it to another, except when both districts agree to it. * * *"* (Emphasis supplied.)

The court then without further reference to section 54-404, supra, turned its attention to a discussion of section 54-408 and said:

" * * * The record discloses that no attempt was made to follow the procedure set up in section 54-408, A.C.1939. * * *

"The trial court held that failure to proceed under this section rendered this portion of the order void and ineffective and, we think, properly so. The only method the statute has provided for annexing a common school district to a high school district is set forth in this section and in Southern Pacific Co. v. Maricopa County, 56 Ariz. 247, 107 P.2d 212, 214, it was held specifically that the addition of territory to a common school district, through the process of changing its boundaries when they are coterminus with those of an existing high school district, does not automatically enlarge the latter. The court used this language:

" ' * * * While there is no explicit provision of the statute declaring whether the annexation of territory to a common school district within an already existing union high school district automatically includes the annexed territory within the high school district, we think the reasonable implication from the provisions of section 1003, supra, is that it does not. Union high school districts are formed of two or more common school districts. When, *as in the present case,* a high school district already exists, the only way in which a common school district may become a part of the high school district is set forth in section 1003, supra. * * *'" (Emphasis supplied.)

No attempt was made in the Ross case to form a union high school district. High School District No. 4 was attempting only to enlarge its boundaries to conform to the proposed new boundaries of Common School District No. 10 which the court in that action permitted to be enlarged.

It will be seen that as a result of the foregoing decisions considerable confusion exists concerning the meaning of these statutes. The officials of Pima County have been both consistent and persistent in their contention that sections 54-403 and 54-404 are intended to set forth the proceedings to be followed in this kind of a case and that said sections apply both to common school districts and high school districts when they desire to change or enlarge their boundaries. We agree with the correctness of this view. We therefore hold that sections 54-403 and 54-404 are intended to set forth the exclusive proceedings to be followed in this kind of a case and apply both to common school districts and high school districts when they desire to change or enlarge their boundaries. The proper proceedings were followed in the Ross case. When a common school district seeks to change its boundaries it is necessary for the high school district with which it is coterminus, or if a union high school, of which it forms a part, to either join in said petition or that the trustees of said high school district, if different in personnel from the common school board, be given notice thereof under the provisions of section 54-403.

Section 54-401, as above stated, provides that the basis of the educational organization of the county and state are the school districts and high school districts. Section 54-403 provides:

"The county school superintendent shall, on the first day of July of each year, file with the board of supervisors a transcript of the boundaries of each school district within his county, * * *."

It has never been even suggested that this section does not include high school districts as well as common school districts. In the next section, 54-404, relating to change of boundaries, the law reads:

"When ten (10) or more qualified school electors residing in *any* district desire that

the boundaries of said district be changed they shall * * *." (Emphasis supplied.)

In the light of the language of the preceding section showing an intent that the phrase, "a transcript of the boundaries of each school district within his county" was intended to include high school districts as well as common school districts, for the court to restrict the words *"residing in any district"* to apply only to common school districts would not be justified under any rule of statutory construction. We believe that the legislature in its use of the words *"any district"* intended to express the intent that all districts—every district in the county, either common or high school districts may change its boundaries in the manner provided in that section. "Any" means all, every, as here used. See Tuten v. Bowden, 173 S.C. 256, 175 S.E. 510, 94 A.L.R. 1443. If the legislature had intended to limit the application of this section to common school districts only, it no doubt would have used language to indicate such a limitation. Not having done so we must conclude that no such limitation was intended.

We further hold that there cannot be a high school district embracing only a part of a common school district. The boundaries of a high school district must be coterminus with a common school district or the outer boundaries of two or more common school districts. The former is superimposed upon the latter.

We recognize that this pronouncement of the law will result in a reversal of the rule announced as to the enlargement of high school districts in the Ross case and our decision in part in the Maricopa County case, supra, but we are convinced that the reasoning and conclusions reached as to high school boundary enlargement in those cases are not sound and are not justified by the language found in the statutes in question.

We have held that "This court is not bound by its former decisions, unless the declarations of principles in such former adjudicated cases commend themselves by their essential soundness." In re Mitchell, 61 Ariz. 436, 150 P.2d 355, 361. We feel it our duty to establish as final what we believe to be a correct and logical interpretation of the sections of the statute here under consideration to the end that public officials will know how to proceed to change or enlarge a school district whether it be a high school or a common school district. We believe that the counties of the State of Arizona are entitled to have these matters definitely determined so that they may not be thwarted in the levying and collection of taxes necessary to maintain our public and high school system.

The contention of the appellees that because no notices were given by either the county school superintendent or the board of supervisors to the school trustees of District No. 10 and High School District No. 4, or to any other person as provided by section 54-403, to our mind,

has no merit whatever for the reason that the trustees of said districts in effect joined in the petition for such annexation. They indorsed their approval thereon and waived the statutory notice. It is presumed, as said in the Ross case, that these persons being disinterested, would exercise their best judgment in the interest of all concerned. We are also of the opinion that the fact that Supervisor Alley was not present at the special meeting of the board of supervisors which was held without the statutory notice of five days, does not constitute reversible error. The statute provides that notice should be given to the absent supervisor. The record shows that Supervisor Alley concurred with the other supervisors in the indorsement and approval of the petition to enlarge said high school district and no possible injury could result to any person by reason of the failure of the other two members of the board to give the absent member five days notice of said special meeting. Neither the provisions of section 54-404 nor 54-408 provide for notice to be given to the electors either in District No. 10 or High School District No. 4. The only notice required to be given in such proceedings is found in section 54-403 which provides that said notice shall be given to the trustees of said district.

It is ordered that the judgment of the lower court be reversed with directions that judgment be entered in accordance with this decision establishing the boundaries of High School District No. 4 to conform to the boundaries of Common School District No. 10 as enlarged.

La PRADE, C. J., and UDALL, STANFORD, and DE CONCINI, JJ., concur.