414 P.2d 976

Virgil STUART, Hal Butler and Hubert R. McHood, Members of the Board of Supervisors of Navajo County, Arizona, Appellants,

v.

WINSLOW ELEMENTARY SCHOOL DISTRICT NO. I, NAVAJO COUNTY, Winslow High School District, and R. E. Booth, D. H. Simmons, Clyde V. Rhoton, Walter Rhyan, James Armstrong and Lucille Thompson, as taxpayers within the said school districts, Appellees.

No. 8511.

Supreme Court of Arizona.

In Division.

May 26, 1966.

1. See A.R.S. § 31–402, the powers of the State Board of Pardons and Paroles.

John Taylor, Navajo County Atty., Holbrook, D. L. Greer, St. Johns, Stevenson, Warden & Smith, Flagstaff, for appellants.

Mangum, Christensen & Wall, Flagstaff, Denzil G. Tyler, Winslow, for appellees.

STRUCKMEYER, Chief Justice.

This is an appeal from a judgment in certiorari of the Superior Court of Navajo County, The Honorable Robert E. McGhee, Judge, in which it was held that an order of the Board of Supervisors of Navajo County, made March 25, 1963, was without authority or jurisdiction and in excess of the jurisdiction of the Board and therefore void and of no force and effect.

The operative facts may be summarized, as follows: Manila Elementary School,

District No. 18 of Navajo County, a sparse-ly populated area with six miles of Santa Fe Railroad right-of-way located within its borders, was bounded on the west by Winslow Elementary School District No. 1 and on the east by St. Joseph Elementary School District No. 2. Generally to the south lies Snowflake Elementary School District No. 5. During the year 1961, the County Superintendent of Schools, under the authority vested in her by A.R.S. § 15–413,[1] suspended the Manila School District for lack of attendance. None of the parties to this appeal question the propriety of this action by the superintendent.

As required by the statute, the superintendent reported the suspension and reasons therefor to the Board of Supervisors of Navajo County at their next meeting, that being December 4, 1961. No action was taken on the suspension on that date and it was continued over to the next meeting

held on January 2, 1962, and again continued until the meeting of January 12, 1962, at which time the Board of Supervisors declared the district lapsed and divided the territory between the three common school districts; Winslow No. 1, St. Joseph No. 2 and Snowflake No. 5.[2] Prior to taking this action, no attempt was made to comply with A.R.S. § 15–402, subsec. C, which provides:

"The boundaries of a district shall not be changed except as provided in this title and then only after the trustees of districts affected *have had written notice* of the proposed change from the county superintendent and have had an opportunity to be heard." (Emphasis supplied.)

On April 1, 1962, the superintendent, in compliance with A.R.S. § 15–402, subsec. A,[3] filed with the board of supervisors and the county assessor a transcript of the

1. A.R.S. § 15–413, subsec. A provides:
 "If in a common school district there has been an average daily attendance of less than eight pupils between the ages of six and twenty-one years for three months during the school year, the county superintendent may at once suspend the district and report the suspension and reasons therefor to the board of supervisors at their next meeting."

2. A.R.S. § 15–413, subsec. B provides:
 "The board may declare the district lapsed and attach the territory thereof to one or more of the adjoining school districts, dispose of the property of the lapsed district and place the proceeds to the credit of the lapsed district.

Thereupon the county superintendent shall determine all unbonded indebtedness of the lapsed district and draw his warrant, on proper vouchers, on the county treasurer in payment of the unbonded indebtedness. Any balance remaining after such payment shall be transferred to the county school fund."

3. A.R.S. § 15–402, subsecs. A and B provide:
 "A. The county school superintendent shall, on or before April 1 each year, file with the board of supervisors and the county assessor a transcript of the boundaries of each school district within the county. The boundaries shown in the transcript shall become the legal

boundaries of these school districts. The transcript reflected changes wherein the territory of the former Manila School District was attached to the other three common school districts.

The Manila Common School District had been located within Snowflake Union High School District. No action was taken by the Board of Supervisors regarding the high schools involved and the transcript filed by the superintendent showed that all of the Manila territory was within the Snowflake Union High School District.

The effect of the filing of the transcript on April 1, 1962, was that taxes were levied and assessments made, with respect to elementary schools, in accordance with the Board's order dividing Manila School District between the three elementary districts herein involved. The high school boundaries, however, were left as they had been previously; that is, the entire area of Manila was still included in Snowflake Union High School District. Therefore, although both St. Joseph High School District and Winslow High School District had common school districts within their confines that had been enlarged by this action of the Board, they were not entitled to any of the tax moneys collected for high school purposes, according to the superintendent's transcript. This is contrary to

our holding in Boyd v. Bell, 68 Ariz. 166, 203 P.2d 618, wherein we held that the boundaries of a high school district must be coterminus with a common school district or the outer boundaries of two or more common school districts and that there cannot be a high school district embracing only a part of a common school district as the former is superimposed upon the latter.

It was thereafter brought to the attention of the Board of Supervisors that this was in conflict with the ruling of this Court in Boyd v. Bell, supra. On March 18, 1963, the county superintendent sent out written notices to the Boards of Trustees of the three elementary school districts and, in addition, to the Holbrook and Keams Canyon Schools. Such notices indicated that the action of the Board of Supervisors on January 12, 1962, concerning the lapsing of Manila School District No. 18 and the subsequent attaching of this territory to adjoining districts would be reviewed and possibly rescinded or amended. They were notified that a hearing would be held by the Board of Supervisors on March 25, 1963, at which time trustees and taxpayers would have the right to be heard regarding this matter.

At the hearing, the Board took no action concerning the prior lapsing of Manila School District but a motion was passed

boundaries of the districts as of the following July 1.

"B. District boundaries shall not be changed except between January 1 and April 1."

rescinding its action of January 12, 1962, which attached the former Manila School District to the three elementary school districts. The Board of Supervisors then passed a motion attaching all of Manila School District to Snowflake Elementary School District No. 5. On April 1, 1963, the superintendent of schools filed a new transcript of boundaries in accordance with the March 25, 1963, order.

The Winslow Common School District No. 1 and Winslow High School District filed an application for writ of certiorari in the superior court on March 27, 1963, naming the Board of Supervisors as respondents and asking the superior court to declare the March 25, 1963, order of the Board of Supervisors void on the grounds that the Board was without jurisdiction to change its former order of January 12, 1962.

A hearing was held on April 19, 1963, in the Superior Court of Navajo County before the Honorable Robert McGhee and the matter was taken under advisement. On August 1, 1963, a minute entry by Judge McGhee was entered stating that,

"the order of the Board of Supervisors made on March 25, 1963, wherein said

Board ordered the previous order of the Board, dated January 12, 1962, be rescinded, was made without authority or jurisdiction in the premises and in excess of the jurisdiction of the Board and therefore void and of no force and effect, and that said order and resolution of said Board be, and the same is hereby annulled and set aside."

On the same date a formal written judgment to the same effect was signed and approved by Judge McGhee and filed with the clerk by attorney for the appellees, but Rule 58(d), Rules of Civil Procedure, 16 A.R.S.,[4] was not complied with in that the proposed judgment had not been served upon opposing counsel.

On August 13, 1963, the Board of Supervisors caused the assessment rolls to show that the territory of the former Manila Elementary School District was divided between Elementary Districts Nos. 1, 2 and 5, and between Winslow High School and Snowflake Union High School Districts.

On August 16, 1963, Snowflake Elementary District No. 5 and Snowflake Union High School District filed as petitioners a complaint for mandamus against the Board

---

4. Rule 58(d), Rules of Civil Procedure, 16 A.R.S., provides in pertinent part:
 "In case of a judgment other than for money or costs, or that all relief be denied, the judgment shall not be settled, approved and signed until the expiration of five days after the proposed form thereof has been served upon opposing counsel unless the opposite party or his counsel endorses on the judgment an approval as to form. This subdivision shall not apply to parties in default."

**382**

of Supervisors of Navajo County, School Districts Nos. 1 and 2 and Winslow High School District. See Cause No. 8123, decided this date, School Dist. No. 1 of Navajo County, etc. v. Snowflake Union High School Dist. of Navajo County, etc., Ariz., 414 P.2d 985. An alternative writ was issued ordering the Board of Supervisors to set tax rates and levies in accordance with their order of March 25, 1963, so that petitioners, Snowflake Common School District No. 5 and Snowflake Union High School District, would receive the entire school tax levy from former Manila School District No. 18, or in the alternative to show cause on August 19, 1963 why they had not done so.

Judge William A. Holohan presided at the hearing of August 19, 1963, at which time respondents appeared and moved for dismissal of the cause under Rule 12(b), Rules of Civil Procedure, alleging lack of jurisdiction of the subject matter.[5] This motion was based upon the fact that the mandamus action amounted to a collateral attack on the certiorari action previously heard before Judge McGhee. Appellants in the instant cause allege that petitioners in the mandamus action were in privity with parties to the certiorari proceeding and therefore were bound by the former action.

On August 22, 1963, Judge Holohan ordered that a peremptory writ issue and the writ did issue on August 26, 1963, ordering the Board of Supervisors to set the school tax rates and cause levies to be made in accordance with the boundary lines established by the Board of Supervisors on March 25, 1963, so that petitioners, Snowflake School Districts, would receive the entire school tax levies from former Manila School District No. 18. On October 14, 1963, a notice of appeal was filed, appealing from the peremptory writ of mandamus issued by Judge Holohan. That appeal is Cause No. 8123, referred to supra.

On March 17, 1964, Judge McGhee ordered the previous judgment of July 31, 1963, be construed as an order for judgment for failure to comply with Rule 58(d), Rules of Civil Procedure. Thereafter, and on June 17, Judge McGhee entered an amended judgment upholding the validity of the January 12, 1962, order of the Board of Supervisors and holding that the March 25, 1963, order of the Board of Supervisors be rescinded as the same, "was made without authority or jurisdiction in the premises and in excess of the jurisdiction of the Board, therefore void and of no force or effect." The order and resolution of that date was therefore annulled and set aside.

5. It is necessary to go into the merits of the mandamus action, which is the subject of Cause No. 8123, also decided by us this date, as the Snowflake Districts maintain that the judgment in that case was res judicata of the issue in the certiorari action because the final judgment was filed prior in time to a proper final judgment in the certiorari action.

On August 17, 1964, notice of the appeal to this Court from the June 17, 1964, judgment of Judge McGhee was filed. We will consider the issues raised seriatim.

■■ We find no support for appellees' contention that the notice provisions of A.R.S. § 15-402 are not applicable to changes in school district boundaries under circumstances falling within the provisions of A.R.S. § 15-413. In a somewhat similar situation, this Court, in In re Boquillas Land & Cattle Co., 26 Ariz. 426, 226 P. 423, held that the general notice requirement of A.R.S. § 15-402 (formerly ¶ 2721, R.S., 1913) applied to changes in district boundaries made under the predecessor of A.R.S. § 15-403 (formerly ¶ 2722, R.S., 1913). In that opinion, it was recognized as an elementary rule of statutory construction that all parts of a statute relating to the same subject be construed together. In Boquillas, it was specifically stated that:

"The jurisdiction of the county superintendent to make an order changing district boundaries is made conditional upon previous notice to the trustees of the district affected. This condition is general, and every order of the superintendent effecting such change is made to depend upon it." Id., 26 Ariz. at 429, 226 P. at 424.

Boyd v. Bell, supra,[7] culminated a series of law suits arising out of the enlargement of a common school district the boundary of which had been coterminous with a high school district. See Ross v. School District No. 16 of Pima County, 60 Ariz. 9, 130 P. 2d 914, and Martin v. Whiting, 65 Ariz. 391, 181 P.2d 819. We held that A.R.S. §§ 15-402 and 15-403 (formerly §§ 54-403 and 54-404, Code of 1939) set forth the exclusive proceedings to be followed when either a common school district or a high school district desires to change or enlarge its boundaries. We stated:

"When a common school district seeks to change its boundaries it is necessary for the high school district with which it is coterminus [sic], or if a union high school, of which it forms a part, to either join in said petition or that the trustees of said high school district, if different in personnel from the common school board, be given notice thereof under the provisions of section 54-403. [Now A.R.S. § 15-402]" 68 Ariz. 166, 178, 203 P.2d 626.

In Boyd v. Bell, it was also determined that a common school district, with which a high school district was coterminous, could enlarge itself and thus automatically enlarge the high school district; however, it was clearly pointed out that all of the stat-.

7. Boyd v. Bell reversed Ross v. School Dist. No. 16 of Pima County, 60 Ariz. 9, 130 P.2d 914, and overruled in part Southern Pacific Co. v. Maricopa County, 56 Ariz. 247, 107 P.2d 212. See 68 Ariz. at 179, 203 P.2d 618.

utory requirements, including notice, must be followed. In that case the notice requirement was deemed waived by the trustees of the enlarged district by virtue of the fact that they, in effect, joined in the petition for annexation. The trustees of the common school district whose territory was diminished by the annexation were given written notice of the time and place of the hearing on the matter.[8] It was held that the notice provisions of § 15–402 were applicable even to the trustees of the districts whose territory was being enlarged. The reasons for such notice being required are even more compelling here.

■ In the case at bar the superintendent exercised the authority given her by A.R.S. § 15–413 to suspend a common school district where, "* * * there has been an average daily attendance of less than eight pupils between the ages of six and twenty-one years for three months during the school year." The mere suspension of the school district by the superintendent did not in and of itself change the boundaries. At that time (before the district was lapsed by the Board) the territory therein existed as a common school district and remained in Snowflake Union High School District even though no common school was being operated. High school districts do not exist independent of common school dis-

tricts. They are built upon the common school districts. Glendale Union High School Dist. v. Peoria School Dist. No. 11, 51 Ariz. 478, 78 P.2d 141.

■ Where a change in boundaries is proposed under A.R.S. § 15–403, as in Boyd and Boquillas, supra, the superintendent is, of course, in a position to notify the trustees of the districts affected of the exact change that is proposed because the statute requires that the petitions for such change be presented first to the superintendent for approval or disapproval. It is to be noted that A.R.S. § 15–402 does not specify that the notice recite the exact details of contemplated change but merely states in general terms that written notice of the proposed change be given. This indicates an intention by the legislature that the notice requirement was applicable to not only those situations where a specific plan was under consideration but also to those, such as here, where a change of boundaries is called for but no specific plan is laid before the board of supervisors. Such intent is also manifest by the fact that if the legislature meant it to be applicable only in the former instances they would have made it a part of those specific statutes rather than make it a part of a statute having general applicability to all changes in school district boundaries.

---

8. These facts are set out in the prior case of Ross v. School Dist. No. 16 of Pima County, 60 Ariz. 9, 130 P.2d 914, which was later overruled by Boyd v. Bell, 68 Ariz. 166, 203 P.2d 618.

Title 15, A.R.S., provides a number of methods in which school district boundaries may be changed. E.g., including additional territory or diminishing the district, A.R.S. § 15–403; annexation of subdivision outside city limits to school district of city, A.R.S. § 15–403, subsec. 1; formation of new school district by subdivision of existing district, A.R.S. § 15–404; annexation of one district to another, A.R.S. § 15–406. Changes made under these statutes are instigated by petition signed by qualified persons. As of necessity these statutes vary somewhat in regard to procedure, the qualification of petitioners, with whom such petitions are filed and whether or not elections are to be held. However, in proceedings brought under these statutes the trustees of the affected districts are required to take such an active part in the proceedings that it would be impossible for a change to be made in the boundaries without their having intimate knowledge of it or actual control over the change. This is not the case under A.R.S. § 15–413, where the change can be made by the board of supervisors, *sua sponte*, once the superintendent of schools has suspended the district, and the trustees of the districts affected have taken no active part in the proceedings.

A change in the boundary of a school district occurs when either territory is attached or detached from a district. See Zawerschnik v. Joint County School Committee of Milwaukee and Waukesha Counties, 271 Wis. 416, 73 N.W.2d 566. As stated, the territory of a high school district is automatically enlarged by operation of law when a common school district upon which it is built enlarges its territory. Boyd v. Bell, supra. Since the boundaries must be coterminous, it follows that when a common school's territory is diminished the territory of the high school district's is also. Once a common school district is legally lapsed it cannot be attached to an adjoining district unless both the common and high schools whose districts will be enlarged are given notice and afforded a hearing.

In Boyd v. Bell, supra, the change made in the district boundaries was under a statute where petitions for the change were presented and approved by the boards of trustees [9] who also specifically endorsed on the petitions their waiver of statutory notice. The case at bar is clearly distinguishable. Here, the trustees were not afforded a chance to approve or disapprove the change. Certainly the fact that the school superintendent, and possibly one of the Board members of the Snowflake School District, may have had actual knowledge

9. Section 54–404 C. '39, which is now A.R.S. § 15–403. Although the present statute contains a notice provision in

it, at the time Boyd was decided it did not.

that the Board was considering lapsing the Manila District cannot be said to have been a waiver of the required written notice and an opportunity to be heard as to how the territory was to be divided. Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 346 P.2d 1101, and Yuma County v. Arizona Edison Co., 65 Ariz. 332, 180 P.2d 868.

We conclude that the notice requirement of A.R.S. § 15–402 is applicable in this situation as a jurisdictional prerequisite. Therefore, the January 12, 1962, order of the Board of Supervisors dividing the territory of the Manila District was void for failure to give notice.

Having determined that the January 12, 1962, order of the Board of Supervisors apportioning the Manila School District among three common school districts, Nos. 1, 2 and 5, was void for the lack of the necessary notice, the further question arises as to the power of the Board of Supervisors to enter its order of March 25, 1963. The statute, § 15–402, subsec. C, does not require notice before a board of supervisors can lapse a school district. It does require notice before the board of supervisors can change the boundaries of another district by incorporating the territory of the lapsed district into that school district, either common or high school. We consider, therefore, that the portion of the order lapsing Manila School District No. 18 was valid but that portion, as stated, attempting to change the boundaries of the elementary school districts was void.

Obviously, action taken by a public body, whether ministerial, legislative or judicial, which is wholly void for want of due process is a nullity, Forman v. Creighton School District No. 14, 87 Ariz. 329, 351 P.2d 165; and, therefore, such further action as is necessary and required by the statute can be taken at any subsequent time. Accordingly, the order of March 25, 1963, made after the appropriate notice as required by A.R.S. § 15–402, subsec. C, supra, is valid and must be given full legal force and effect.

Appellants urge that the judgment rendered by Judge Holohan in the subsequent mandamus action was determinative of the issues in the instant cause. This was first raised in the court below after Judge McGhee, on March 17, 1964, ruled that the judgment he had previously rendered July 31, 1963, was to be construed as an order for judgment. Appellants filed objections to the proposed judgment and also moved to dismiss or for summary judgment. But from the face of the peremptory writ of mandamus Judge McGhee was able to determine that the issues were the same and that the alternative writ was issued seventeen days after the original judgment in the instant cause had been entered.

We agree with the rulings of Judge Mc-Ghee in overruling objections to the proposed judgment and denying the motion to dismiss or for summary judgment. Res judicata, or more properly collateral estoppel, is applicable; but under these facts it applies to the mandamus action, not to the instant cause.

 A school district or a county stands in the place of its taxpayers. There is a privity between them, the same as there is between a private corporation and its stockholders. Atchison, T. & S. F. R. Co. v. Board of Com'rs of Fremont County, 95 Colo. 435, 37 P.2d 761. It has been held repeatedly that a judgment against a county or its legal representatives is a matter of general interest to all the people, as, for example, one respecting the levy and collection of a tax, and is binding, not only on the county and its official representatives named as defendants, but also upon all taxpayers of the county though not named as defendants in the case. Bear v. Board of County Com'rs, 122 N.C. 434, 29 S.E. 719 (reversed on other grounds, 124 N.C. 204, 32 S.E. 558); Clark v. Wolf, 29 Iowa 197; State ex rel. Wilson v. Rainey, 74 Mo. 229; Sauls v. Freeman, 24 Fla. 209, 4 So. 525; Cannon v. Nelson, 83 Iowa 242, 246, 48 N.W. 1033; Atchison, T. & S. F. R. Co. v. Board of Com'rs of Fremont County, supra.

 A valid judgment or decree of a court of competent jurisdiction in an action by or against the municipality determining the validity of an ordinance is binding upon the public. In re Engelhard & Sons Co., 231 U.S. 646, 34 S.Ct. 258, 58 L.Ed. 416; Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747; O'Connell v. Pacific Gas & Electric Co., 9 Cir., 19 F.2d 460; San Antonio Utilities League v. Southwestern Bell Telephone Co., 5 Cir., 86 F.2d 584, cert. den. 301 U.S. 682, 57 S. Ct. 783, 81 L.Ed. 1340; Berman v. Denver Tramway Corp., 10 Cir., 197 F.2d 946.

 It is argued that the parties in the two actions are not the same and, therefore, a judgment in one had no effect upon the other. There is no merit to this contention. The two judgments are both from the same court, both determine the validity of the same orders of the Navajo County Board of Supervisors. We do not have merely a case of two courts with concurrent jurisdiction but we have two judges with identical general jurisdiction granting conflicting judgments in separate cases involving the same subject matter. All parties in both actions were equally as interested in and affected by the action of the court in either action whether they were a named party or not.

The Snowflake Districts, Elementary District No. 5 and the High School District, though not named as parties in this case, were affected by the court's action as is evidenced by their promptly seeking a

writ of mandamus from another judge to counteract the effect of the judgment. Certiorari was brought to challenge the validity of the second order of the Board of Supervisors which benefitted them. It was in their interest to uphold the validity of such order, which was also the position of the Board. Officials of the Snowflake Districts provided most of the testimony in support of the Board's position. They could have intervened under Rule 24, Rules of Civil Procedure, 16 A.R.S.,[10] if they did not think the Board was representing their interest adequately. See State ex rel. Bonney v. Arthurs, 197 Okl. 215, 169 P.2d 561, and Ellison v. Hodges, 71 Okl. 16, 174 P. 1089.

██ The fact that the decision of the court in the instant case was erroneous, as we determined above, is not determinative of the appeal. Between an erroneous and a correct judgment, there is no distinction with regard to conclusiveness. Shattuck v. Shattuck, 67 Ariz. 122, 192 P.2d 229; In re Federal Water & Gas Corp., 3 Cir., 188 F.2d 100, cert. den. Cherney Corp. v. Securities & Exchange Comm., 341 U.S. 953, 71 S.Ct. 1018, 95 L.Ed. 1375; Hatchitt v. United States, 158 F.2d 754.

██ One further question remains as to whether certiorari is the proper remedy.

We think it is. While ordinarily boards of supervisors act as administrative or legislative bodies, if notice is required in a proceeding before a board not having the character of an ordinary court, and a hearing of objections to the contemplated action is provided for, and the order to be made is one which affects the property or rights of citizens, the proceeding is judicial in nature so as to be reviewable. Hart v. Bayless Investment & Trading Co., supra, and see Jarman v. Board of Review of Schuyler County, 345 Ill. 248, 178 N.E. 91, 93, 77 A.L.R. 1350.

We summarize our conclusions as follows:

██ 1. The January 12, 1962, order of the Navajo County Board of Supervisors was partially void for failure to comply with the jurisdictional requirements of the notice imposed by A.R.S. § 15–402, subsec. C.

2. The March 25, 1963, order of the Board of Supervisors was a valid exercise of its statutory authority.

3. The judgment in this cause was valid and binding on all persons, including Judge Holohan, and determinative of all issues in the case until reversed on appeal.

10. Rule 24(a) provides:
 "Intervention of right. Upon timely application anyone shall be permitted to intervene in an action:
 \* \* \* \* \*

"2. When the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action."

4. The attempted exercise of jurisdiction by Judge Holohan in determining judgment in Cause No. 8123 was invalid and nugatory.

For the reasons set forth, the judgment is reversed and remanded to the trial court with directions to enter judgment for respondents, the Navajo County Board of Supervisors, upholding the validity of the order of March 26, 1963.

UDALL and McFARLAND, JJ., concur.